MATTHEWS, Respondent, vs. TOWN OF SIGEL, Appellant.

*January 8—January 28, 1913.*

*Highways: Injuries from defective culvert: Evidence: Identity of broken plank: Material issues: Instructions to jury: Special verdict: Form: Change during argument: Appeal: Harmless errors.*

1. In an action against a town for personal injuries sustained in driving over an alleged defective culvert, the evidence being sufficient to sustain the finding by the jury that the injury was caused by a defective plank in such culvert, it is immaterial whether or not a particular plank introduced in evidence was the one which caused the injury.

2. The plaintiff having admitted upon the trial that no defect in the highway was claimed because of the previous breaking of a short piece from one end of the plank in question by a traction engine, it was not error to refuse instructions asked by defendant relative to the law applicable to steam engines crossing culverts.

3. An instruction that public highways must be made and maintained in such condition that all persons traveling over the same with vehicles or otherwise may do so with reasonable safety, the traveler being in the exercise of ordinary care, was not erroneous because it failed to exclude traction engines in express terms, where it was given in connection with a question of the special verdict relating to travelers with teams, and where a previous instruction told the jury to disregard a defect caused by a traction engine.

4. A change in the form of a special verdict which does not prejudice the rights of parties, such as the withdrawal of a superfluous question relating to a mere evidentiary fact, even after the argument has begun, is within the sound discretion of the court.

5. Where an instruction upon the subject of future disability authorized the jury to consider such as it is reasonably certain "may" follow from the injuries complained of, but this was followed immediately by a correct statement of the rule, limiting the recovery for future disability to such as the plaintiff is reasonably certain to suffer, the error must be deemed to have been corrected, especially in view of sec. 3072m, Stats.

APPEAL from a judgment of the circuit court for Wood county: BYRON B. PARK, Circuit Judge. *Affirmed.*

Action for personal injuries. Plaintiff alleges that on the 19th day of August, 1910, while she was traveling westerly with due care on one of the highways of the defendant town riding in a carriage drawn by one horse, she was suddenly thrown in front of the carriage, run over, and sustained damages by reason of her horse breaking through a rotten plank in a culvert and by reason of the fact that the whole culvert was depressed below the surface of the highway so that carriages pitched forward and downward in coming upon it. The plank that broke was the fourth one from the east, and was located about in the center of the culvert. The break was also approximately in the center of the plank, which was originally about sixteen feet long, but had been broken off about three feet from the north end three days previously by a traction engine, and there was also evidence to show that a hole in it near the south end was made a short time prior to plaintiff's accident by the horse of one Jaeger. The culvert was not claimed to be defective by reason either of the hole made by Jaeger's horse or by the break made by the traction engine. Plaintiff's brother testified that immediately after the accident he went down to the culvert, removed the defective plank, which he found in a number of pieces, and replaced it by a new one; that he took the old plank and kept it in a dry place and in the same condition he found it till the time of the trial. This plank was received in evidence, was more or less definitely identified by several other witnesses, and one question of the special verdict, as originally

drawn, was whether the plank in evidence was the plank in the culvert through which plaintiff's horse broke. After the argument of the case had been opened to the jury by plaintiff, and while it was being argued by defendant, this question was withdrawn and questions 3 and 4 substituted therefor. Defendant's counsel was advised by the court that he could argue the substituted questions. The jury returned the following verdict:

"(1) Was the plaintiff injured on August 19, 1910, on the highway of the defendant town, described in the complaint, and at the place on said highway described in the complaint? A. (by the court). Yes.

"(2) Was the highway on August 19, 1910, at the place described in the complaint, reasonably safe for public travel for persons with teams, who were in the exercise of ordinary care? A. No.

"(3) If you answer question 2 'No,' then answer this question: Was the highway defective because the planks of the culvert were below the grade of the road on each side thereof? A. No.

"(4) Was the highway defective because of a defective plank in the culvert? A. Yes.

"(5) If you answer question 2 'No,' then answer this question: Had such condition existed long enough to enable the defendant by the exercise of ordinary care to discover and remedy it before the accident to plaintiff? A. Yes.

"(6) If you answer question 2 'No,' then answer this question: Did the pathmaster of the district within which the defective highway was, have knowledge of such condition in time so that the town could have remedied the defect by the exercise of ordinary care, before the accident to plaintiff? A. Yes.

"(7) If you answer question 2 'No,' then answer this question: Was such unsafe condition of the highway the proximate cause of the plaintiff's injuries? A. Yes.

"(8) Was the plaintiff guilty of any want of ordinary care which proximately caused or contributed to her injuries? A. No.

"(9) If the court shall determine that plaintiff is entitled

to judgment in this action, at what sum do you assess her damage?    A. $2,250."

Defendant's motions to correct, and to set aside, the verdict, and for a new trial, were overruled by the court, and from a judgment for plaintiff entered upon the verdict defendant appealed.

*B. M. Vaughan,* for the appellant.

*D. D. Conway,* for the respondent, cited, among other cases, *Szewczyk v. E. W. Ellis L. Co.* 146 Wis. 452, 131 N. W. 977; *Kiekhoefer v. Hidershide,* 113 Wis. 280, 89 N. W. 189; *New Home S. M. Co. v. Simon,* 107 Wis. 368, 83 N. W. 649; *Annas v. M. & N. R. Co.* 67 Wis. 46, 30 N. W. 282; *Sickle v. Wolf,* 91 Wis. 396, 64 N. W. 1028; *Sawyer v. Choate,* 92 Wis. 533, 66 N. W. 689.

VINJE, J.    Much of defendant's brief is devoted to arguing the questions of the identity of the plank received in evidence, the alleged error of the court in refusing to charge as requested relative to the use of highways by steam engines, and the lack of notice to the town of the breakage of the plank by the traction engine only three days prior to plaintiff's injury.    The identity of the plank is not a material issue in the case.    Conceding that the plank received in evidence is not the plank that was in the culvert at the time of the accident, there is ample testimony upon which to support the verdict.    Frank Sedall testified that in 1909 he noticed that the third or fourth plank in the culvert was weak; that it bent when his horse stepped upon it; and that he notified Mr. Knuth, the pathmaster, of its weak condition.    The evidence of Julius Matthews is that in 1909 he noticed that one plank in the center of the culvert was "absolutely poor" and he called the attention of the pathmaster to it.    The latter admits Mr. Matthews called his attention to the culvert, but thinks it was in June, 1910.    William Schmidt, who drove a creamery wagon over the culvert two or three times a week

from March 3, 1910, said there was a weak plank near the middle that would spring more than the rest. Frank Matthews, who claimed he took the plank home shortly after the accident, testified as to the condition he found it in—broken into a number of pieces. Mrs. Kroll, who was riding with plaintiff at the time of the injury, said "the horse was going slow, on a walk. He broke the plank and stepped down, plunged forward, got out and started off with me." The plaintiff testified: "We was driving slow and careful, and the horse broke right through with his front feet, about the center of the plank; and I had a tight line; and the same time the horse broke down this dip and the tight line drawed me over; and when the horse plunged forward I flew out of the buggy." She said she saw the break of the plank near· the north end and the hole in the south end of it, but that neither had anything to do with accident; that she drove in the center of the road, and there was ample space for her to have passed safely had not the plank broken under the horse's feet. There is no evidence to show that the horse went through the plank at any place except near the center thereof. It thus appears that the finding of the jury that there was a defective plank in the culvert which caused the injury is supported by satisfactory evidence. That being so, it becomes immaterial whether or not the plank received in evidence was the identical plank in the culvert. The evidence that it was, however, is quite definite and persuasive, and would be sufficient to support a finding to that effect.

Error is claimed because the court refused to give certain instructions requested by defendant relative to the law applicable to steam engines crossing culverts. Touching the breakage of the plank by the traction engine the court charged the jury: "The plaintiff does not claim that the removal of this piece, about three feet in length, rendered the highway defective. And you must not consider this fact as in any wise rendering the highway defective." In view of this

charge, and of plaintiff's repeated admissions that no defect in the highway was claimed by reason of the breakage caused by the traction engine, it is apparent that the jury was not concerned with the law applicable to engines crossing culverts, and the court properly refused to give the requested instructions:

In connection with question 2 the court charged:

"But whatever the condition in any or all respects mentioned, a public highway, in whatever locality or whatever the amount and character of the travel over the same, it being such as the town authorities should reasonably anticipate is likely to use the same, must be made and maintained in such condition that all persons traveling over the same, with vehicles or otherwise, may do so with reasonable safety, by the exercise of that ordinary care which the time, place and circumstances require of the traveler."

It is urged that this instruction, taken in connection with the court's refusal to charge as to the law applicable to engines, led the jury to believe that they must find the culvert strong enough to bear up a traction engine weighing eight tons in order to be reasonably safe, claiming that the word "vehicle" is broad enough to include a traction engine. We shall not stop to consider the exact scope of the word "vehicle," for it is evident that the jury could not have understood the instruction to include a traction engine as coming within it. This is manifest from the instruction itself, coupled with the former instruction to disregard the defect caused by the traction engine, and is made doubly evident by a reference to the wording of the question to which the instruction related, namely, Was the highway reasonably safe for public travel for persons *with teams?* This *ex vi termini* excluded a traction engine.

The refusal to charge that no recovery could be had for medical attendance and nursing, the plaintiff being a minor living with her parents, was not error. There was no evi-

dence in the case upon which to base such a charge.    Besides,
the court states in his opinion that the claim was withdrawn
by plaintiff's counsel in the presence of the jury, and there
was nothing in the charge given from which the jury could
properly have inferred that damages should be given for med-
ical attendance and nursing.

It appears that one of the questions in the special verdict,
as first drawn, was whether the plank received in evidence
was the plank in the culvert at the time plaintiff was injured.
After the argument of the case was opened by plaintiff, and
during defendant's argument to the jury, this question was
withdrawn and questions 3 and 4 of the verdict rendered
substituted.    The withdrawal of such question is alleged as
error.    It has already been pointed out that the question did not
embrace an ultimate issuable fact.    At best, it presented but
an evidentiary fact, and such facts are generally not prop-
erly to be determined by a special verdict.    *Mauch v. Hart-*
*ford,* 112 Wis. 40, 87 N. W. 816.    All the material issues
in the case were embraced in the verdict rendered, and the
withdrawal of the question was within the sound discretion
of the trial court.    Its control of the special verdict does not
cease when the argument to the jury begins, and any change
therein that does not prejudice the rights of parties cannot
constitute reversible error.    It is the duty of trial courts to
correct or perfect the verdict at any time before it is ac-
cepted from the jury as the verdict in the case, provided it is
done in such a manner as not to prejudice the rights of par-
ties.    The elimination of a superfluous question could harm
no one.

In instructing the jury relative to plaintiff's right to re-
cover for future disability the court said:

"You should take into consideration such future disability,
if any is proven, as it is reasonably certain from the evidence
*may* follow because of such injuries, and the extent to which

such future disability will render her unable to work and earn her livelihood."

It is contended that the use of the word "may" italicized above, instead of the word "will," misled the jury, and authorized them to assess damages for such future disability as may follow. That the selection of the word "may" instead of the word "will" was inapt if not erroneous is freely conceded by the trial judge and concurred in by this court. Whether or not it prejudicially misled them is quite another question and one which can best be solved by giving the rest of the charge upon that subject, which was as follows:

"You should take into consideration her future suffering, if any, as you shall from the evidence be convinced she is reasonably certain to suffer in the future. Your estimate of damages for future disability and suffering, if any, must rest upon the whole evidence, which must satisfy your minds that such future disability and suffering are reasonably certain to follow by reason of her said injuries resulting from the accident."

So we see that in the very next sentence relating to the element of future suffering the court gave the correct rule. And the sentence following that told the jury they must base their estimate of damages for both future disability and future suffering upon the whole evidence and limit both to what she is reasonably certain to suffer in the future. Such specific correct statement of the rule of damages following immediately upon the use of the word "may," above quoted, must be deemed to have corrected the mistake. Especially must it be so held in view of the provisions of sec. 3072m, Stats. Even before the enactment of the statute it was held that where a mistake made in instructing the jury was thereafter so fully corrected as to leave no reasonable ground to claim that they were misled, it could not avail appellant. *Annas v. M. & N. R. Co.* 67 Wis. 46, 63, 30 N. W. 282;

*Middleton v. Jerdee,* 73 Wis. 39, 40 N. W. 629; *New Home S. M. Co. v. Simon,* 107 Wis. 368, 83 N. W. 649.

The remaining errors assigned have received careful consideration, but we do not deem any of them prejudicial or of sufficient importance to merit separate treatment.

*By the Court.*—Judgment affirmed.