WENDEL, Appellant, v. LITTLE, by Guardian *ad litem,* and another, Respondents.

*October 31—November 28, 1961.*

For the appellant there was a brief by *Riley, Riley & Pierce* of Madison, and oral argument by *Thomas W. Pierce.*

For the respondents there was a brief by *William E. Johnson* and *Swingen, Stern & Lenahan,* all of Madison, and oral argument by *Mr. Johnson.*

MARTIN, C. J.  The collision occurred at about 12:25 a. m. on October 25, 1959, at the intersection of Park and Regent streets in the city of Madison.  Little was traveling east along Regent street while Wendel was proceeding north

on Park street. Little's car struck Wendel's car in the middle of the left side. The impact caused Wendel to be thrown from his car onto the pavement. He landed on his left side, hitting his arm, head, and shoulder.

At the time of the accident Wendel was an undergraduate student of the University of Wisconsin. At the time of trial he was a student at the University of Wisconsin Law School and was twenty-two years of age.

Appellant raises two questions on this appeal. The first contention is that he is entitled to a new trial on the ground that the damages found by the jury were inadequate.

In reviewing a jury's verdict on damages this court must rely primarily on the good sense of the jurors. Where the question is a close one it should be resolved in favor of the verdict. The trial court has an advantage over the appellate court in that it sees the witnesses and hears the testimony and has an opportunity to observe the injured person. *Makowski v. Ehlenbach* (1960), 11 Wis. (2d) 38, 103 N. W. (2d) 907.

Wendel testified that immediately after the accident he was emotionally upset and experienced a throbbing pain in his head, arm, and fingers. The day after the accident he sought medical attention and his arm was placed in a sling which he wore for a week. He testified that these injuries interfered with his sleep and studying. He also experienced pain and stiffness in his neck. He was given a neck collar by a doctor, which he wore four to six weeks. This device was very uncomfortable and caused a skin rash.

Appellant alleged that the accident resulted in permanent injury to his spine, causing him to suffer repeated headaches, stiffness in the neck, and loss of sleep. He also alleged past and future medical expenses.

Wendel testified that at the time of trial he was still experiencing headaches and stiffness in the neck which, besides causing physical discomfort, interfered with his studying.

Dr. Rounds, a radiologist, testified for appellant: He had taken X rays of Wendel about eight or nine days after the accident. He testified that the X rays disclosed:

". . . a reversal of the usual curve of the spine. They disclosed a rotational deformity . . . some soft tissue swelling . . . a small bony reaction of one of the vertebra which we took to be a very minor fracture."

On the basis of Wendel's medical history, his complaints, and the X rays, Dr. Rounds testified that it was his opinion the injuries of the appellant were related to the accident. He testified that as a result of this condition, muscle spasm, pain, and limitation of neck motion would ensue. He also testified that the X rays indicated a slight arthritic condition in the upper spine which could have resulted from the injuries suffered in the accident. It was brought out that Dr. Rounds did not compile an extensive case history on Wendel. The subjective symptoms related by Wendel were part of the basis on which Dr. Rounds gave his opinion, though his opinion was based 95 per cent on the X rays. Dr. Rounds also testified that it was possible Wendel had had a prior neck injury. He believed the injuries could have been caused by the accident, but they could stem from some other cause. He testified that a chronic throat condition could cause or contribute to muscular changes of the cervical spine such as appellant's X rays showed.

Dr. Juhl, a radiologist, testified for the defense. He related that he had recently engaged in research concerning the cervical spine. He testified that from his research study he found:

". . . there were a number of minor variations occurring in the normal [cervical spine] which had by most writers on the subject been considered abnormal in the past."

Dr. Juhl examined the X rays of Wendel and testified that the irregularities of the spine shown by the X rays

could exist in a normal person, a person with no history of injury. He also testified that the irregularities could have been caused by injury.

Dr. Miller, an orthopedic surgeon, testified for the appellant. He examined and treated Wendel about ten days after the accident; he was of the opinion that Wendel had an injury to his neck and that it resulted from the accident. He testified that Wendel's neck injury would probably be permanent and would result in pain and limitation of motion. It was brought out that Dr. Miller's opinion was based largely on the subjective symptoms of Wendel. The only objective findings were a muscle spasm in Wendel's neck and the X rays. It was also brought out that Wendel failed to inform Dr. Miller of his past medical history with respect to a recent back strain, a prior tonsillectomy, and a possible adenoidectomy. Dr. Miller also testified that he wrote a letter to the army about six months after the accident stating that Wendel was able to participate in military training.

Dr. Hanson, an orthopedic surgeon, testified for the defense. He examined Wendel the day of the accident at University Hospitals. He testified that Wendel complained of pain in his left arm and shoulder, but made no complaint of a head or neck injury. He X-rayed Wendel's shoulder and noted a muscle spasm which was indicative of injury.

Wendel experienced what is commonly called a "whiplash" injury. This kind of an injury, which involves the neck and cervical spine, presents difficult problems of proof. The biggest problem is that much of the damage proof must be based on testimony of subjective symptoms. Thus, the appellant's demeanor on the stand and his credibility become crucial. The jury and the trial judge are in the best position to make decisions as to these items. Dr. Rounds, appellant's expert witness, testified that it is possible to have X-ray findings, a showing of abnormality, without there neces-

sarily being pain experienced by the subject. There was testimony that might have impaired the credibility of appellant in the eyes of the jury. The jury could have believed that some of appellant's symptoms of injury were the result of other causes. For example, the testimony indicated that appellant had complained of a back strain shortly before the accident.

The testimony indicated that the only permanent injuries would ·be an arthritic condition in appellant's upper spine and a neck condition. Dr. Rounds testified that he had ·no prognosis to a reasonable medical certainty with respect to the development or lack of development of the arthritic condition. Dr. Miller testified that the headaches would not be permanent.

The past medical bills of the appellant amounted to around $275. The record does not disclose any testimony as to the amount of possible future medical expenses.

On the evidence, the damages as found by the jury are not unreasonably low. See Anno. 16 A. L. R. (2d) 393, which contains an extensive annotation on the adequacy of damages in personal-injury actions. Inadequate damages by themselves do not establish perversity. *Gustafson v. Engelman* (1951), 259 Wis. 446, 49 N. W. (2d) 410. The trial court held that the damages were supported by the evidence and weight should be given to its opinion. *Mossak v. Pfost* (1950), 258 Wis. 73, 44 N. W. (2d) 922.

Appellant also contends that he is entitled to a new trial because the verdict returned by the jury was defective under sec. 270.25 (1), Stats. This statute provides:

"A verdict agreed to by five sixths of the jurors shall be the verdict of the jury. If more than one question must be answered to arrive at a verdict on the same cause of action, the same five sixths of the jurors must agree on all such questions."

This court has held that a verdict which is defective under this section requires a new trial. *Haase v. Employers Mut. Liability Ins. Co.* (1947), 250 Wis. 422, 27 N. W. (2d) 468. But the question here is whether a new trial is mandatory if the verdict as returned by the jury is defective under the statute, or whether the trial court may cure the defect by amending the verdict.

Appellant contends that a new trial is mandatory and cites *McCauley v. International Trading Co.* (1954), 268 Wis. 62, 66 N. W. (2d) 633, as authority. This case involved a defective verdict caused by jury dissent, in which the trial court attempted to cure the defect by changing the answer to the damage question by application of the additur rule. We stated there that a new trial was required unless the trial court's effort to cure the defective verdict could be approved. It was held, however, that the trial court had improperly applied the additur rule and, further, that the change in the damage answer could not cure the defect because the changes were not made on amounts which the testimony established as a matter of law. A new trial was granted.

A more-recent case also involved an attempt to cure a verdict defective under sec. 270.25 (1), Stats. In *Strupp v. Farmers Mut. Automobile Ins. Co.* (1961), 14 Wis. (2d) 158, 109 N. W. (2d) 660, the trial court attempted to cure the defect by changing the answer to the comparison question, finding each party 50 per cent negligent. On review of the evidence this court held that the parties were not equally negligent as a matter of law. Thus, the court was not justified in changing the answer. A new trial was granted because of the defective verdict.

In both the *McCauley* and *Strupp Cases* this court disapproved of the answer change to cure the defective verdict because the evidence did not warrant the changes as a

matter of law. Also, the issues embodied in those questions were particularly for the jury.

In this case, before the issues were submitted to the jury, counsel for appellant moved the court for a directed verdict on Wendel's negligence, taking the position that as a matter of law Wendel was not contributorily negligent. In accordance with the court's statement in *Davis v. Skille* (1961), 12 Wis. (2d) 482, 107 N. W. (2d) 458, the trial court reserved its ruling on the motion and submitted the question to the jury. After the verdict was returned it ruled on the motion, finding Wendel free of any contributory negligence as a matter of law, changed the answers, and struck the comparison question as being surplusage.

This court has held it permissible to cure an inconsistent special verdict by changing answers, as long as the evidence establishes the change as a matter of law. See *Statz v. Pohl* (1954), 266 Wis. 23, 62 N. W. (2d) 556, 63 N. W. (2d) 711; *Carr v. Chicago & N. W. R. Co.* (1950), 257 Wis. 315, 43 N. W. (2d) 461; *Marhofke v. Brucken* (1926), 191 Wis. 442, 211 N. W. 303. It has also been held by this court that the elimination by the trial court of a superfluous question from the special verdict is not prejudicial. *Matthews v. Sigel* (1913), 152 Wis. 123, 139 N. W. 721.

Here, in effect, the trial court directed a verdict as to Wendel's contributory negligence. A directed verdict on some fact which is established by the evidence as a matter of law does not violate a litigant's constitutional right to a trial by jury. *Hoan v. Journal Co.* (1941), 238 Wis. 311, 298 N. W. 228. Furthermore, the change of answers was not prejudicial to appellant. Respondents agreed to pay the full amount of the damages as found by the jury, and appellant was not precluded from obtaining a review of the damage answer by this court.

Appellant does not question the sufficiency of the evidence to warrant the change. The record supports the trial court's finding that Wendel, as a matter of law, was not contributorily negligent.

*By the Court.*—Judgment affirmed.