IHLENFELDT, Appellant, v. SVOBODA CHURCH FURNITURE COMPANY, Respondent.

*No. 171. Argued October 6, 1970.—Decided November 3, 1970.*
(Also reported in 180 N. W. 2d 572.)

440

442

For the appellant there was a brief by *Charlton, Yanisch, Greco & Roffa,* attorneys, and *Earl A. Charlton* of counsel, all of Milwaukee, and oral argument by *Earl A. Charlton.*

For the respondent there was a brief by *Welsh, Trowbridge, Bills, Planert & Gould,* and oral argument by *Vance M. Waggoner,* all of Green Bay.

BEILFUSS, J. There are two questions presented on this appeal:

1. Is the finding of the trial court that the listing contract provided for a sale of defendant-respondent's corporate stock, as distinguished from its net assets alone, against the great weight and clear preponderance of the evidence?

2. Did the offer to purchase the net assets supersede the listing contract and entitle the broker to a commission?

By way of preliminary comment the parties do not dispute the legality of the listing contract.

Further, neither party pursues any serious argument concerning the authority of the Kohrts to act on behalf of the corporation or the shareholders. In the conclusion to appellant's brief he states that there is no evidence in the record that the Kohrts were authorized by the shareholders to sell the stock, and that the Kohrts were minority shareholders acting as officers on behalf of the corporation under the authority of the board of directors.

However, if this argument by the plaintiff is valid it is self-defeating because the same two officers with the same authority signed the acceptance of the offer to purchase upon which the plaintiff now seeks to recover. The record does not reveal that the stockholders or the

board of directors ever authorized the Kohrts to sell all the assets of the corporation.

This was a small corporation, primarily family owned and operated. It does not appear that all formalities insofar as meetings and records were observed as to the officers' authority. However, there is testimony in the record that there was an informal agreement among the stockholders to sell the entire corporation. The trial court apparently concluded that Frank W. Kohrt and Richard J. Kohrt had authority to act for the stockholders. We, too, for the purpose of this opinion, will assume these officers had authority to act for the stockholders.

We believe that the trial court was correct in its determination that the controlling question here involved an interpretation of what the parties intended to be sold under the 1964 listing contract.

In interpreting the contract the trial court found as a matter of fact that it provided for the sale of respondent's corporate stock. Unless this finding is contrary to the great weight and clear preponderance of the evidence it must be affirmed. This court has consistently said:

"The standard of review of a trial court's findings in the ordinary case where trial is not before a jury is as follows:

" 'Since the trial court tried the case without a jury, its findings will not be upset on appeal unless they are contrary to the great weight and clear preponderance of the evidence and it is not necessary the evidence in support of the findings constitutes the great weight or clear preponderance of the evidence. Nor is it sufficient that there is evidence to support a contrary finding. To command a reversal, such evidence although sufficient to support a verdict must constitute the great weight and the clear preponderance of the evidence. [Cases cited.]' *Mitchell v. Western Casualty & Surety Co.* (1966), 30 Wis. 2d 419, 421, 141 N. W. 2d 212." *In re Adam's Rib, Inc. (Kaminsky)* (1968), 39 Wis. 2d 741, 746, 747, 159 N. W. 2d 643.

From a review of the record and the extensive opinion of the trial court which details the evidence upon which it relied this finding is not contrary to the great weight and clear preponderance of the credible evidence.

The same parties had executed a prior listing contract for the sale of respondent-corporation approximately one year before this contract. The property to be sold was specifically described as "648 shares of issued stock—all stock issued to date." The appellant-broker admits preparing that contract. The 1964 contract was executed at appellant's suggestion that the listing price should be reduced.

The testimony of both Frank Kohrt and Richard Kohrt clearly indicates that their intention always was to sell the corporate stock and that such a sale would include the corporation's net assets. Both testified that they signed the offer to purchase with the intent and understanding that it was an offer to purchase the stock.

Frank Kohrt testified that he met with appellant on the morning of October 26, 1964, the day on which the offer to purchase was submitted, and that he instructed appellant to sell the stock. It was at this meeting that appellant-broker also received the price-reduction agreement which specified that the price was reduced to "$144,000 or $222.22 per share, on our listing contract dated March 2, 1964." The fact that the price was computed on an amount "per share" basis clearly supports the inference that it was stock that was for sale.

The reason for the failure of the ultimate sale clearly was the misunderstanding as to the subject matter of the sale. The Kohrts intended to sell all of the corporate stock and not just the net assets. This was corroborated by the subsequent correspondence from respondent's attorney to the proposed purchasers, and the authorization to release the funds in plaintiff's trust account.

The trial court also found that the language of the listing contract itself supports this interpretation. If the contract was to provide for a sale of the net assets

alone the reference to the stock would have been a contradiction since the property of a corporation may be sold without conveying an interest in the corporation. But if it was to provide for a sale of the stock then the language referring to the physical assets, though perhaps unnecessary, could have meaning as being a further description of the property mentioned in the first sentence.

The trial court stated that though it was guided in its decision by what it found to be the great weight and clear preponderance of the evidence, it was also influenced by the rule cited in *Boutelle v. Chrislaw* (1967), 34 Wis. 2d 665, 677, 150 N. W. 2d 486, where this court said:

" 'The listing agreement having been a printed form supplied by the plaintiff broker, the same must be most strongly construed against the broker in case of any ambiguity or doubt. [Citations omitted.]' "

The facts of this case indicate that the printed form for the listing contract was supplied by the appellant-broker, and that he inserted the description of the property to be sold.

Under the standard of review as set forth above the findings of fact cannot be set aside.

The appellant-broker argues that the signed offer to purchase dated October 26, 1964, superseded the terms of the listing contract and that it represented a meeting of the minds and was a valid, enforceable contract. If this contention is true then appellant would be entitled to his commission. In *Wauwatosa Realty Co. v. Paar* (1956), 274 Wis. 7, 14, 15, 79 N. W. 2d 125, this court said:

"The right of a broker to compensation accrues on completion of negotiations and on a meeting of the minds of the principal and the customer procured by the broker; but, unless provided otherwise in the contract of employment, it is not dependent on the final consumma-

tion of the transaction or the performance of the agreement entered into between the principal and the customer. 12 C. J. S., *Brokers,* p. 183, sec. 84."

Also, 12 Am. Jur. 2d, *Brokers,* p. 924, sec. 183, states:

"Where the principal actually consummates the particular transaction with the person produced by the broker or enters a contract with him, the question of the ability, readiness, and willingness of such person is no longer material. . . ."

Even though the sale was never consummated, if there had been a meeting of the minds between the Kohrts and the proposed purchasers on a contract on terms different from those authorized by the principal in the listing agreement, appellant would be entitled to compensation for the services he rendered.

However, we must note this theory of recovery was not presented or considered in the trial court but is raised by appellant-broker for the first time in his brief.

The pleadings clearly set forth a cause of action for recovery under the listing contract based upon a full compliance with its terms. The trial court described the position taken by the appellant-broker in its memorandum opinion as follows:

"The plaintiff's position, as the court understands it, is that the language of the agreement of March 2, 1964, indicates an intention to sell the *physical assets* of the defendant company. On the first page of plaintiff's written brief it is stated, 'The plaintiff's position is that the language of the listing contract indicates an intention to sell the *physical assets* of the Svoboda Church Furniture Co.' (Emphasis supplied.)

"Another statement of the plaintiff's position is found at page 6 of plaintiff's written brief, to-wit: 'Plaintiff maintains that *he was never employed or authorized to sell the stock* of the Svoboda Church Furniture Co., *but was rather authorized to sell its net assets.'* (Emphasis supplied.)

"Again it is stated at page 7 of the plaintiff's written brief: 'That the listing contract of March 2d, 1964, entered into by the plaintiff broker and the corporation provided for a sale of *net assets* of the corporation.' (Emphasis supplied.)"

Based on this position the court concluded that the determinative issue before it was an interpretation of that contract.

In his brief before this court, appellant-broker states:

". . . This offer to purchase supersedes the terms of the listing contract and is a natural extension thereof. It is not the plaintiff's position that the defendant was obligated to accept the offer of October 26, 1964, or the plaintiff was entitled to commission upon submission of the offer to purchase.

". . .

". . . (It is the plaintiff's position that the signed offer to purchase represented a meeting of the minds and a valid, enforceable contract.)"

This argument represents a departure from his position at the trial, and to a degree is inconsistent with it since under the issues framed at trial appellant would have been entitled to his commission upon submission of that offer regardless of whether it was accepted or not. This court has continuously said that it will not countenance the raising of issues for the first time on appeal when they were not raised in the trial court and it had no opportunity to pass on them. *McDonald v. Chicago, M., St. P. & P. R. R.* (1968), 38 Wis. 2d 526, 157 N. W. 2d 553; *Estate of Detjen* (1967), 34 Wis. 2d 46, 148 N. W. 2d 745.

In *Estate of Detjen, supra,* at pp. 56, 57, the court said:

". . . What is more important, this question was not raised as an issue in the trial court and consequently was not passed upon by that court. . . . The claim now be-

ing raised for the first time on appeal is contrary to the claim made in the trial court and comes too late to receive our consideration as a matter of right. The record being insufficient for an intelligent consideration of the question and the equities not being compelling, we will not consider this question."

In *McDonald v. Chicago, M., St. P. & P. R. R., supra,* at p. 534, we said:

". . . Therefore, the defendant is attempting to raise this issue for the first time on appeal. This court has frequently said that it will not countenance the raising of issues for the first time on appeal. While this rule is 'one of administration and not of power,' there is no compelling reason to depart from the general practice in this case."

Although it might be argued that this issue may be inferred from the pleadings, it was neither presented to nor determined by the trial court and it is our belief the record is insufficient to hold as a matter of law that the offer to purchase represented a meeting of the minds on terms different from those expressed in the listing contract. On the contrary, the record could support a finding that there never was a valid agreement, and there does not appear to be any compelling reason to speculate that respondent would have been bound by the presumption that the Kohrts knew and assented to what they were signing. As stated above, the Kohrts insist they understood the offer to purchase was for the sale of stock. This is consistent with the fact that on the same day they had signed a statement reducing the sale price calculated upon a per-share-of-stock-basis. If appellant intended to rely on this issue he should have raised it in the trial court so that a pertinent finding of fact could have been made and an adequate record preserved for review.

*By the Court.*—Judgment affirmed.