HEIN and wife, Appellants, v. TORGESON, sole trader d/b/a NAVARINO FEED & SUPPLY COMPANY, Respondent.

*No. 108. Submitted under sec. (Rule) 251.54 March 1, 1973.—*
*Decided March 27, 1973.*
(Also reported in 205 N. W. 2d 408.)

For the appellants the cause was submitted on the brief of *Bachman, Cummings & McIntyre* of Appleton.

For the respondent the cause was submitted on the brief of *Fulton, Menn & Nehs, Ltd.*, attorneys, and *Peter S. Nelson* of counsel, all of Appleton.

WILKIE, J.    Five issues are raised on this appeal:

1.  Did the trial court err in failing to find the defendant causally negligent as a matter of law?

2.  Did the trial court err in failing to answer the special verdict questions relating to defendant's failure to warn plaintiffs of the danger of an improper urea mixture?

3.  Did the trial court err in failing to instruct the jury (1) that as a matter of law defendant was negligent in failing to have proper mixing instructions and warnings on the urea packages; and (2) as to all elements of damages?

4.  Did the trial court err in failing to change the jury's answer to the special verdict damage question?

5.  Should a new trial in the interest of justice be ordered?

1. *Was Torgeson negligent as a matter of law?* Plaintiffs' principal contention on this appeal is that the defendant's undisputed sale of urea was made in an improperly labeled container which violated sec. 94.72 (2), Stats.,[1] and that this violation constituted negligence

[1] Sec. 94.72 (2), Stats., provides: "(2) LABELING. All manufacturers, importers, jobbers, firms, associations, corporations or persons shall before selling, offering or exposing for sale or distributing in this state any brand of commercial feed have printed on, or attached to each bag, package, carton or delivered with each bulk lot a plainly printed statement, hereafter referred to as the label, in a conspicuous place on the outside, containing a legible and clearly printed statement in the English language clearly and truly stating:

"(a) The net weight of the contents of the package, bag, carton or bulk lot;

"(b) The brand or trade name of the feed;

"(c) The name and principal address of the manufacturer or person responsible for placing the commodity on the market;

"(d) The minimum percentage of crude protein;

"(e) The minimum percentage of crude fat;

"(f) The maximum percentage of crude fiber;

"(g) The name of each ingredient used in its manufacture except as may be exempt by department rule. The official names of all materials which have been so defined by the association of American feed control officials shall be used in the declaration of the names of ingredients, but no ingredient statement shall be required for single ingredient feeds officially defined by the association of American feed control officials. The department may by rule permit the use of a collective term for a group of ingredients which perform a similar function;

"(h) In the case of mixed feeds containing more than a total of five percent of one or more mineral ingredients, or other unmixed materials used as mineral supplements, and in the case of mineral feeds, mixed or unmixed, which are manufactured, represented and sold for the primary purposes of supplying mineral elements in rations for animals or birds, and containing mineral elements generally regarded as dietary factors essential for normal nutrition, the minimum percentage of calcium (Ca), phosphorus (P), of iodine (I) and the maximum percentage of salt (NaCl), if the same be present. Provided, that if no nutritional properties other than those of a mineral nature be claimed for a mineral feed

per se chargeable to the defendant. From the record it is clear that this contention was never brought to the attention of the trial court during trial or on motions after verdict. This court will not consider new grounds of relief which are not adequately brought to the attention of the trial court.[2] While this rule is one of administration and not of power,[3] there is no compelling reason in this case to depart from the general practice of refusing to consider this contention. In the instant case, the jury found the plaintiffs to be totally causally negligent in the deaths and sickness caused to their cattle. It is abundantly clear from the record that this determination is overwhelmingly supported by credible evidence which all points to the fact that the plaintiffs, knowing that they should be careful about the mixture, went ahead in a careless manner with the resulting overmixture.

2. *Was it error when the trial court failed to rule as a matter of law that defendant's failure to have proper mixing instructions and warnings caused plaintiffs' damages?* Plaintiffs argue further that the defendant had a common-law duty to warn them of the dangerous propensities of cattle feed too heavily loaded with urea, and his failure so to warn violated this duty and so clearly caused their damages. Their contention is that the trial

product, the percentums of crude protein, crude fat and crude fiber may be omitted;

"(i) In the case of feeds containing for their principal claim dietary factors in forms not expressible by the foregoing chemical components or are thereby inadequately described, a statement of guarantee as shall be specified by ruling of the department.

"(j) 'Department' means department of agriculture."

[2] *See e. g., Ihlenfeldt v. Svoboda Church Furniture Co.* (1970), 48 Wis. 2d 439, 449, 180 N. W. 2d 572; *Smith v. Beloit Corp.* (1968), 40 Wis. 2d 550, 556, 162 N. W. 2d 585; *Heuer v. Wiese* (1955), 270 Wis. 541, 544, 72 N. W. 2d 332.

[3] *McDonald v. Chicago, M., St. P. & P. R. R.* (1968), 38 Wis. 2d 526, 534, 157 N. W. 2d 553.

court committed error when it failed to so rule as a matter of law. In support of their contention, plaintiffs cite this court's decisions in *Strahlendorf v. Walgreen Co.*[4] and *Smith v. Atco Co.*[5]

While *Strahlendorf* does stand for the proposition that a retailer may render himself liable for a failure to adequately warn of a product's harmful propensities,[6] this court specifically held the causation issue was a question of fact for the jury to determine. In this respect *Strahlendorf* does not support the position taken here by the plaintiffs. In that case this court refused to find causally negligent as a matter of law a retailer's failure to place a proper warning on a plastic toy airplane and stated:

". . . However, plaintiff Harry V. Strahlendorf, father of Butchie and Karen, testified that as a result of testing two of the three planes he became aware of the fact that they were dangerous and that the remaining third plane should not be intrusted to Butchie. This is why he hid the plane from Butchie. *From this, the jury reasonably could have determined that the lack of a proper warning on the instruction card was not a substantial factor in causing the accident to Karen because the father had already been alerted to any danger such printed warning might have accomplished.* This reasoning would justify the jury's finding that defendant's failure to warn was not causal." (Emphasis added.) [7]

In the instant case plaintiff Norbert Hein testified that he became aware of the feeding value of urea through reading trade journals and other literature. While he testified he asked defendant's employee how to mix the urea, the record also indicates Hein was aware that the appropriate mixture was approximately one percent urea to the balance of the ingredients. The jury could have

---

[4] (1962), 16 Wis. 2d 421, 114 N. W. 2d 823.

[5] (1959), 6 Wis. 2d 371, 94 N. W. 2d 697.

[6] *Supra,* footnote 4, at page 432.

[7] *Id.* at page 427.

validly concluded Hein was aware of the dangerous propensities of urea. *Strahlendorf* is applicable to the instant case in mandating:

"The causation issue with respect to the found negligence on the part of defendant presented an issue of fact for the jury to determine, and the trial court was correct in refusing to disturb its finding." [8]

While in *Smith v. Atco Co.* this court did say that in certain instances the "causal connection may be so clear upon undisputed facts as to make the determination of causation one of law for the court, while in other situations it becomes one of fact for the jury," [9] the court there held that the violation of sec. 94.67, Stats., by virtue of a misbranded can of wood preservative fell within the latter category. Assuming the trial court had determined the causation issue as there was no question relating thereto in the special verdict, the supreme court found no credible evidence to sustain such a finding because there was no evidence that the plaintiff had actually relied on the label which stated "When dry, wood treated with Penta-Mix can be handled freely without danger of contamination to humans or animals." [10]

In the instant case there was ample evidence that the plaintiff, Norbert Hein, was aware of both the contents of the bag labeled fertilizer-grade urea and its dangerous propensities. While the jury might have concluded that plaintiff relied on the observation of defendant's employee that the cattle would not eat feed too heavily loaded with urea, it is clear from its apportionment of total causal negligence to plaintiffs it did not. This is not a case where the causal connection between the failure to warn of dangerous propensities and the harm

[8] *Supra*, footnote 4, at page 428.
[9] *Supra*, footnote 5, at page 380. *See also: Steinkrause v. Eckstein* (1920), 170 Wis. 487, 490, 175 N. W. 988.
[10] *Supra*, footnote 5, at page 378.

caused is so clear that the jury's determination ought to have been supplanted. The evidence was that the appropriate mixture of urea to feed was one percent. Plaintiff Norbert Hein knew this and the jury was justified in believing Hein was adequately advised of the dangerous propensities of urea.

3. *Did the trial court err in failing to instruct the jury (1) that the defendant was negligent as a matter of law for failing to have proper mixing instructions and warnings on the urea container; and (2) as to all elements of damages?* Plaintiffs argue that the trial court ought to have instructed the jury that the defendant was negligent as a matter of law for failing to have proper mixing instructions and warnings on the urea containers. Plaintiffs contend that the instruction given was inadequate as it did not sufficiently advise the jury of the defendant's duty to warn of the inherently dangerous qualities of urea. Plaintiffs' argument must fail for two reasons. First, they did not object to the instruction given nor did they offer to amplify that instruction in any particular. Second, the instruction given was adequate.

This court has often reiterated the rule that the failure to request inclusion of instructions or a failure to object to those given operates to waive such alleged error:

"Appellant argues that the trial court committed several errors with respect to submission of issues and instructions to the jury. The record does not disclose any requests made by appellant's counsel either for questions to be submitted in the special verdict or for the instructions he now maintains should have been given. Thus, appellant is now precluded from raising these questions." [11]

Although the rule providing for this waiver is not inflexible [12] the requirement for an objection to be made

[11] *Van Wie v. Hill* (1961), 15 Wis. 2d 98, 105, 106, 112 N. W. 2d 168.

[12] *Reuling v. Chicago, St. P., M. & O. Ry.* (1950), 257 Wis. 485, 44 N. W. 2d 253.

to the trial court has been waived only in extraordinary situations and this is not such a case, particularly in view of the fact that the instruction as given did sufficiently instruct the jury on defendant's duty to warn:

". . . A person fails to exercise ordinary care when, without intending to do any wrong, he does an act or omits a precaution under circumstances in which a person of ordinary intelligence and prudence ought reasonably to foresee that such act or omission will subject the person or property of himself or another to unreasonable risk of injury or damage. Negligence may also be said to mean a want of, or failure to exercise that care and caution which a person of ordinary intelligence and prudence usually exercises in a like or similar situation, work, or operation, under like or similar circumstances."

Since the entire trial was conducted along the lines of Torgeson's failure to advise plaintiffs of the proper urea mixing instructions and the potential harmful effects of an improper ratio of urea to feed, it is clear that this instruction was sufficient to the jury as to defendant's duty of care. The jury could have validly concluded that plaintiff Norbert Hein was aware of the potential toxicity of an overmixture of urea in cattle feed. As pointed out in *Strahlendorf,* a jury may validly conclude that a failure to warn of potential danger is not causal.[13]

With respect to plaintiffs' argument that the trial court ought to have instructed the jury as to all the elements of damages, this court's decision in *Essock v. Mawhinney* clearly negatives such contention.[14] In *Essock* the contention on appeal was that the trial court erred in instructing the jury as to the measure of damages. The trial court instructed such measure of damages " 'is such sum as will reasonably compensate . . . for such loss in

[13] *Supra,* footnote 4, at page 427.
[14] (1958), 3 Wis. 2d 258, 88 N. W. 2d 659.

property value, if any . . . .' " [15] According to this court:

". . . The instruction might well have spelled out the proposition that the loss was the difference between the total of prices actually received and the prices which the jury reasonably believed would have been received but for the negligence of the Loan Company. *Nevertheless, the instruction given was not erroneous and no instruction covering the point had been requested by the Loan Company.*" (Emphasis added.) [16]

Similarly in the instant case, the instruction that "[t]he amount to be inserted by you in answer to the damages question is for you to determine from the evidence" was not error and a more complete instruction was not requested.

4. *Did the trial court err in failing to change the jury's answer to the damages question?* Plaintiffs also argue that the jury's award of damages was so inadequate that the trial court erred in refusing their request, after verdict, to change that award. Of course, when there is no finding of negligence on the part of a defendant which is necessary if he is going to be held liable for the damages to injured parties, the question for this court's determination in reviewing a damage finding is not whether the award is adequate but whether such assessment is perverse.[17] We find no perversity here. Although the award for each of the nine dead milk cows was $250 per cow, when the plaintiffs' expert actually testified that eight of the cows were valued at an average of $375 per animal and one at approximately $425, the expert was testifying as to averages and the failure of the jury to adopt the expert's evaluation was

[15] *Id.* at page 270.
[16] *Id.* at page 271.
[17] *Dickman v. Schaeffer* (1960), 10 Wis. 2d 610, 617, 103 N. W. 2d 922.

not perverse. Furthermore, the jury awarded $55 for veterinarian fees which was the amount actually shown by receipt. With respect to jury assessment of damages, this court has many times stated that a mere low damage award is not sufficient to establish perversity in the verdict:

"If there is any credible evidence which under any reasonable view supports the jury finding as to damages, especially when the verdict has the approval of the trial court, this court will not disturb the finding. Even when it still appears that the award is low, this court will not interfere with the jury's finding, unless the award is so unreasonably low as to shock the judicial conscience. . . ."[18]

We conclude that the jury award of damages was not perverse and that there was no error on the part of the trial court in refusing to change the jury's answer to the damages question.

5. *Should a new trial be awarded in the interest of justice?* While this court can, pursuant to sec. 251.09, Stats., reverse a judgment on the ground that justice has miscarried, it has often stated such power "is exercised with great caution and sparingly."[19] It is our clear conclusion here that justice did not miscarry.

*By the Court.*—Judgment affirmed.

---

[18] *Puls v. St. Vincent Hospital* (1967), 36 Wis. 2d 679, 693, 154 N. W. 2d 308. *See also: Wendel v. Little* (1961), 15 Wis. 2d 52, 58, 112 N. W. 2d 172.

[19] *Graff v. Roop* (1959), 7 Wis. 2d 603, 606, 97 N. W. 2d 393.