Kingston, Respondent, vs. Chicago & Northwestern Railway Company, Appellant.

*December 9, 1926—January 11, 1927.*

*Negligence: Railroads: Setting fires: Fire set by one person uniting with fire of unknown origin and causing damage: Liability if one fire arises from natural causes: Proximate cause: Burden of proof.*

1. Each of two or more joint tortfeasors whose concurring acts of negligence result in injury is responsible for the entire damage.   p. 613.
2. Where two causes, each attributable to the negligence of a responsible person, concur in producing an injury, and either cause would produce it regardless of the other, each person is liable for the entire damage whether the concurrence be intentional, actual, or constructive, since each adopts the conduct of his co-actor, and the damages cannot be apportioned.   p. 613.
3. Where a forest fire, set by sparks from defendant's engines, unites with another fire of natural origin or of much greater proportions, and thereafter destroys property, the defendant has the burden of showing that the fire set by it was not the proximate cause of the damage.   [*Cook v. Minneapolis, St. P. & S. S. M. R. Co.* 98 Wis. 624, distinguished.]   p. 616,
4. Where the defendant railroad company was responsible for the origin of one forest fire, which united with another fire of equal rank and of unknown origin, but which it is morally certain was set by some human agency, and the combined fires destroyed plaintiff's property, the defendant is liable for the entire damage.   p. 617.

Appeal from a judgment of the circuit court for Shawano county: Edgar V. Werner, Circuit Judge.   *Affirmed.*

Kingston v. Chicago & N. W. R. Co. 191 Wis. 610.

Action to recover damages caused by a fire. One main line of defendant's railroad extends in a general north-and-south direction from Gillett, Wisconsin, to Saunders, Michigan, through Bonita. A branch line extends westerly from Bonita to Oconto Company's logging road. The branch runs generally in an east-and-west direction and is about ten miles in length. LaFortune's spur is on the branch about two miles west of Bonita. The spur consists of a sidetrack on the south side of and parallel with the branch track. Plaintiff's property was located on a landing, known as Kingston's landing, and as the cedar yard, adjacent to and south of the spur track.

On April 29, 1925, a forest fire was burning about one half to one mile northwesterly, nearly west, of this landing. On the same date another fire was burning about four miles northeast of the landing. On April 30th these two fires united in a region about 940 feet north of the railroad track. The line of fire thus formed after the union was about forty or fifty rods east and west. It then traveled south and burned plaintiff's property, consisting of logs, timber, and poles on this landing or in the cedar yard. The plaintiff claims that both fires which united were set by the railroad company, one by a locomotive on its main line running north of Bonita, the other by a locomotive on the branch about three miles west of Bonita and about a mile in a westerly direction from the spur.

The jury found that both fires were set by locomotives belonging to the defendant company and that both fires constituted a proximate cause of the damage. It further appears that in an effort to save plaintiff's property in the afternoon of April 30th, when the united fire was bearing down upon this property, a crew of men had gathered at the spur with a view of assisting in fighting the fire. A brother of the plaintiff was present acting for and representing the plaintiff. There was talk of back-firing, but Kingston, represent-

ing the plaintiff, said that he did not want to back-fire except as a last resort.    Among these men were certain section men in the employ of the defendant, who, it appears, were there for the purpose of fighting the fire.    Finally Kingston gave the word to back-fire.    He, with others, started a back-fire in a westerly direction.    At a point about seventy feet from where Kingston started his back-fire, three section men started a back-fire which they carried in an easterly direction. This back-fire was started upon or very close to the line of defendant's right of way.    The back-fire started by the section men got beyond their control, ran across the track and into plaintiff's logs and timber.    The jury also found that the section men were negligent in permitting the back-fire to get beyond their control, and such negligence constituted a proximate cause of the damage.

Judgment was rendered for the plaintiff for the amount of the damages as found by the jury, and the defendant brings this appeal.

For the appellant there was a brief by *J. F. Baker* of Milwaukee and *Llewellyn Cole* of Clintonville, and oral argument by *Mr. Cole.*

For the respondent there was a brief by *Winter & Winter* of Shawano, and oral argument by *P. J. Winter.*

OWEN, J.    The jury found that both fires were set by sparks emitted from locomotives on and over defendant's right of way.    Appellant contends that there is no evidence to support the finding that either fire was so set.    We have carefully examined the record and have come to the conclusion that the evidence does support the finding that the northeast fire was set by sparks emitted from a locomotive then being run on and over the right of way of defendant's main line.    We conclude, however, that the evidence does not support the finding that the northwest fire was set by sparks

emitted from defendant's locomotives or that the defendant had any connection with its origin. A review of the evidence to justify these conclusions would seem to serve no good purpose, and we content ourselves by a simple statement of the conclusions thus reached.

We therefore have this situation: The northeast fire was set by sparks emitted from defendant's locomotive. This fire, according to the finding of the jury, constituted a proximate cause of the destruction of plaintiff's property. This finding we find to be well supported by the evidence. We have the northwest fire, of unknown origin. This fire, according to the finding of the jury, also constituted a proximate cause of the destruction of the plaintiff's property. This finding we also find to be well supported by the evidence. We have a union of these two fires 940 feet north of plaintiff's property, from which point the united fire bore down upon and destroyed the property. We therefore have two separate, independent, and distinct agencies, each of which constituted the proximate cause of plaintiff's damage, and either of which, in the absence of the other, would have accomplished such result.

It is settled in the law of negligence that any one of two or more joint tortfeasors, or one of two or more wrongdoers whose concurring acts of negligence result in injury, are each individually responsible for the entire damage resulting from their joint or concurrent acts of negligence. This rule also obtains "where two causes, each attributable to the negligence of a responsible person, concur in producing an injury to another, either of which causes would produce it regardless of the other, . . . because, whether the concurrence be intentional, actual, or constructive, each wrongdoer, in effect, adopts the conduct of his co-actor, and for the further reason that it is impossible to apportion the damage or to say that either perpetrated any distinct injury

that can be separated from the whole. The whole loss must necessarily be considered and treated as an entirety." *Cook v. M., St. P. & S. S. M. R. Co.* 98 Wis. 624 (74 N. W. 561), at p. 642. That case presented a situation very similar to this. One fire, originating by sparks emitted from a locomotive, united with another fire of unknown origin and consumed plaintiffs' property. There was nothing to indicate that the fire of unknown origin was not set by some human agency. The evidence in the case merely failed to identify the agency. In that case it was held that the railroad company which set one fire was not responsible for the damage committed by the united fires because the origin of the other fire was not identified. In that case a rule of law was announced, which is stated in the syllabus prepared by the writer of the opinion as follows:

"A fire started by defendant's negligence, after spreading one mile and a quarter to the northeast, near plaintiffs' property, met a fire having no responsible origin, coming from the northwest. After the union, fire swept on from the northwest to and into plaintiffs' property, causing its destruction. Either fire, if the other had not existed, would have reached the property and caused its destruction at the same time. *Held:*

"(1) That the rule of liability in case of joint wrongdoers does not apply.

"(2) That the independent fire from the northwest became a superseding cause, so that the destruction of the property could not, with reasonable certainty, be attributed in whole or in part to the fire having a responsible origin; that the chain of responsible causation was so broken by the fire from the northwest that the negligent fire, if it reached the property at all, was a remote and not the proximate cause of the loss."

Emphasis is placed upon the fact, especially in the opinion, that one fire had "no responsible origin." At other times in the opinion the fact is emphasized that it had no "known

Kingston v. Chicago & N. W. R. Co. 191 Wis. 610.

responsible origin." The plain inference from the entire opinion is that if both fires had been of responsible origin, or of known responsible origin, each wrongdoer would have been liable for the entire damage. The conclusion of the court exempting the railroad company from liability seems to be based upon the single fact that one fire had no responsible origin or no known responsible origin. It is difficult to determine just what weight was accorded to the fact that the origin of the fire was unknown. If the conclusion of the court was founded upon the assumption that the fire of unknown origin had no responsible origin, the conclusion announced may be sound and in harmony with well settled principles of negligence.

From our present consideration of the subject we are not disposed to criticise the doctrine which exempts from liability a wrongdoer who sets a fire which unites with a fire originating from natural causes, such as lightning, not attributable to any human agency, resulting in damage. It is also conceivable that a fire so set might unite with a fire of so much greater proportions, such as a raging forest fire, as to be enveloped or swallowed up by the greater holocaust, and its identity destroyed, so that the greater fire could be said to be an intervening or superseding cause. But we have no such situation here. These fires were of comparatively equal rank. If there was any difference in their magnitude or threatening aspect, the record indicates that the northeast fire was the larger fire and was really regarded as the menacing agency. At any rate there is no intimation or suggestion that the northeast fire was enveloped and swallowed up by the northwest fire. We will err on the side of the defendant if we regard the two fires as of equal rank.

According to well settled principles of negligence, it is undoubted that if the proof disclosed the origin of the northwest fire, even though its origin be attributed to a third per-

son, the railroad company, as the originator of the north-east fire, would be liable for the entire damage. There is no reason to believe that the northwest fire originated from any other than human agency. It was a small fire. It had traveled over a limited area. It had been in existence but for a day. For a time it was thought to have been extinguished. It was not in the nature of a raging forest fire. The record discloses nothing of natural phenomena which could have given rise to the fire. It is morally certain that it was set by some human agency.

Now the question is whether the railroad company, which is found to have been responsible for the origin of the northeast fire, escapes liability because the origin of the northwest fire is not identified, although there is no reason to believe that it had any other than human origin. An affirmative answer to that question would certainly make a wrongdoer a favorite of the law at the expense of an innocent sufferer. The injustice of such a doctrine sufficiently impeaches the logic upon which it is founded. Where one who has suffered damage by fire proves the origin of a fire and the course of that fire up to the point of the destruction of his property, one has certainly established liability on the part of the originator of the fire. Granting that the union of that fire with another of natural origin, or with another of much greater proportions, is available as a defense, the burden is on the defendant to show that by reason of such union with a fire of such character the fire set by him was not the proximate cause of the damage. No principle of justice requires that the plaintiff be placed under the burden of specifically identifying the origin of both fires in order to recover the damages for which either or both fires are responsible.

Speaking of the decision in the *Cook Case,* Thompson, in his work on Negligence, § 739, says:

"The conclusion is so clearly wrong as not to deserve discussion. It is just as though two wrongdoers, not acting in

Kingston v. Chicago & N. W. R. Co. 191 Wis. 610.

concert, or simultaneously, fire shots from different direc-
tions at the same person, each shot inflicting a mortal wound.
Either wound being sufficient to cause death, it would be a
childish casuistry that would engage in a debate as to which
of the wrongdoers was innocent on the ground that the other
was guilty."

His illustration does not exactly answer the reason which
we conceive to underlie the decision in the *Cook Case*. It
would exactly fit it, as we understand the *Cook Case,* if the
one who was known to have fired one of the shots should
be permitted to escape liability for death because he who
fired the other shot had not been identified, although it was
certain that the other shot had been fired by some other
human being. We are not disposed to apply the doctrine of
the *Cook Case* to the instant situation. There being no at-
tempt on the part of the defendant to prove that the north-
west fire was due to an irresponsible origin, that is, an origin
not attributable to a human being, and the evidence in the
case affording no reason to believe that it had an origin not
attributable to a human being, and it appearing that the
northeast fire, for the origin of which the defendant is re-
sponsible, was a proximate cause of plaintiff's loss, the de-
fendant is responsible for the entire amount of that loss.
While under some circumstances a wrongdoer is not re-
sponsible for damage which would have occurred in the ab-
sence of his wrongful act, even though such wrongful act
was a proximate cause of the accident, that doctrine does not
obtain "where two causes, each attributable to the negli-
gence of a responsible person, concur in producing an injury
to another, either of which causes would produce it regard-
less of the other." This is because "it is impossible to ap-
portion the damage or to say that either perpetrated any dis-
tinct injury that can be separated from the whole," and to
permit each of two wrongdoers to plead the wrong of the
other as a defense to his own wrongdoing would permit both

wrongdoers to escape and penalize the innocent party who has been damaged by their wrongful acts.

The fact that the northeast fire was set by the railroad company, which fire was a proximate cause of plaintiff's damage, is sufficient to affirm the judgment. This conclusion renders it unnecessary to consider other grounds of liability stressed in respondent's brief.

*By the Court.*—Judgment affirmed.