Essock and another, Plaintiffs and Appellants, vs. MAWHIN-
NEY and wife, Defendants and Appellants: FORT ATKIN-
SON LOAN & INVESTMENT COMPANY, Defendant and
Respondent.

*February 3—February 28, 1958.*

For the appellants Henry Essock and First Citizens State Bank there were briefs by *Geffs, Geffs, Block & Geffs* of Janesville, and oral argument by *Jacob Geffs*.

For the appellants Courtney Mawhinney and Josephine Mawhinney there was a brief by *Dempsey & Robinson* of Whitewater, and oral argument by *Clark Dempsey*.

For the respondent there was a brief by *Johnson & DeBauffer* of Whitewater, attorneys, and *Kenney, Korf & Pfeil* of Elkhorn of counsel, and oral argument by *Francis J. Korf*.

FAIRCHILD, J.   The questions involved on this appeal are : (1) Whether there was consideration for the December 23d promise of the Loan Company to pay plaintiffs $1,757.87; (2) whether the findings that the negligence of the Loan Company caused loss to Mawhinneys amounting to $3,500 were supported by evidence; (3) whether the record supports any allowances in favor of the Loan Company and against the Mawhinneys. Upon the trial there was some testimony tending to show that the agreement orally made on October 11th, was not correctly expressed in the documents executed on that day. There was testimony that the memorandum written by Clark on December 23d did not reflect an agreement but merely a proposed settlement which the Loan Company was to carry out only if satisfied upon further investigation of the facts. There was testimony that the vice-president may not have participated in the December 23d agreement and that Clark did not have authority to enter into it. Upon the appeal, however, there seems to be no challenge of the sufficiency of the evidence to support the jury's findings as to the agreements made. There is also no challenge of the sufficiency of the evidence to support the finding that the Loan Company was negligent in respect to the time of commencing the sale. Plaintiffs have apparently abandoned their appeal from the part of the final judgment which vacates the interlocutory judgment in their favor and against the Mawhinneys.

1. *Consideration for the December 23d agreement.* The referee determined that on October 11th the Mawhinneys owed plaintiffs some $12,562.02. Evidently some payments were made by the Mawhinneys after that date and adjusting for those payments, the amount as of October 11th would have been some $12,445.78. The jury found that when plaintiffs permitted the sale to proceed, the Loan Company agreed to pay plaintiffs the proceeds in excess of $10,700, the latter being the amount paid by the Loan Company on the date of sale. The jury must have been satisfied that the $10,700 payment was accepted only to apply upon the Mawhinneys' indebtedness and not as payment in full. If the notation on the check voucher and the terms of the assignment of the mortgages be considered, it is clear that the plaintiffs did not accept the $10,700 in full payment but were left with the right to recover the unpaid balance (some $1,860) out of the excess proceeds of sale and the Plymouth car. The principal fact which cast doubt upon their right to resort to the Plymouth and the fact which the circuit court deemed controlling was the delivery of satisfactions of the mortgages which did not except the Plymouth as did the assignment.

Next the jury found that on December 23d the Loan Company agreed to pay plaintiffs $1,757.87 in return for an assignment of the mortgage interest in the Plymouth. The delivery by plaintiffs to the Loan Company of an assignment which excepted the Plymouth and formal satisfactions which did not (both as part of the one transaction) created ambiguity as to the plaintiffs' rights thereafter. It is our opinion, however, that the ambiguity was resolved by the parties in recognizing in the agreement made December 23d that the plaintiffs did have a mortgage interest in the Plymouth. Before December 23d the Loan Company owed plaintiffs $866.53, the excess proceeds of the sale. This amount would be insufficient to pay plaintiffs in full and they had the right to collect the balance out of the security afforded by the

Plymouth. Giving full significance to the jury's finding, plaintiffs, on December 23d, gave up their rights against the Plymouth and this was consideration for the Loan Company's promise to pay the larger amount to plaintiffs. The memorandum written by Clark does indicate that the parties failed to realize on December 23d that the gross receipts at the time of sale were subject to adjustments. The memorandum contains the figure of $1,452.22 as the amount of the excess proceeds of sale instead of $866.53, but the Loan Company has not sought any relief based upon mistake. Accordingly, plaintiffs are entitled to judgment for $1,757.87 with interest and costs.

2. *Existence and extent of damages.* The circuit court concluded that the fact of loss had not been established with sufficient certainty and therefore changed answers as to the occurrence of loss caused by negligence and the amount thereof. It is apparent that the proposition that the Mawhinneys needed to establish was that the proceeds actually received at the sale were less than they would have been had there been no negligent delay in starting the sale. In considering this portion of the case, we must review the evidence which would tend to support the jury's verdict.

There was testimony that the beginning of the sale was delayed for almost two hours; that the Mawhinneys and Cobb left the premises by automobile after the time for the sale to start and that they returned approximately an hour later; that some of the crowd saw them leave and return; and that as much as half the crowd which had been present at the time set for the sale had left before the sale began. An auctioneer testified in response to a question in which he was asked to assume material portions of the facts mentioned that it was his opinion "that the sale wouldn't run smooth and that the personal property wouldn't bring as much under those adverse conditions as it would under a normal auction sale." He explained that where there is financial difficulty

at a sale or an auction company has purchased the goods beforehand "it always has some effect on the price because the people feel the man has to sell and that they can buy cheap. It always has some effect pricewise when he has to sell. That naturally would be the assumption on the delay when the sale didn't start on time." The proceeds of the sale amounted to $11,566.53. While we appreciate that market value may not necessarily be realized at an auction sale and while there was testimony by an employee of the Loan Company that the fair market value of the property on the day of the sale was between $11,000 and $12,000, there was also testimony by the owner that its fair market value was $18,000. When another auctioneer had originally discussed the holding of an auction with the Mawhinneys during the summer of 1954, he had appraised the property at $15,000 to $16,000. In the latter part of August Mr. Cobb contacted the Mawhinneys about conducting their sale. The Mawhinneys told him they had made arrangements with the other company and of the appraisal at $15,000 to $16,000. Mawhinney testified that Cobb gave him a figure of $18,000 and said "that was the least it would bring," that the previous appraisal was too low and that "we can get much more." Plaintiff Essock testified that he felt that the personal property included in his mortgage was adequate security to cover the indebtedness. A comparison of the prices received at the sale for the items covered by the larger mortgage indicates that the prices received for those items of property fell short of the indebtedness secured by some $4,000.

Is it speculative to determine that loss resulted from the delay? Or did the jury weigh the probabilities? One could not hope to reconstruct the sale even if some of the persons who left before the sale began were produced as witnesses. It is possible that none of the persons who left the premises after the time set for the sale would have bid any higher for any item than was bid by those who remained, and it is pos-

sible that those who did remain bid just as much for items of property as they would have, had the larger crowd been present. We are of the opinion, however, that the jury could properly find that the greater probability is that the prices obtained were lower than they would have been but for the Loan Company's negligence, and that the standard of reasonable certainty can be met.

While the evidence of market value is not conclusive as to the amount which the sale should have brought, it can be considered in determining the reasonableness of the figure at which the jury fixed the loss. Considering the margin between the proceeds of the sale and the more-favorable figures as to value, the jury's award of $3,500 was reasonable and within the bounds of discretion. The applicable rule is set forth in a decision of this court dealing with the uncertainty of computation of damages resulting from the death of an undetermined number of mink kits. "The fact that the full extent of the damages in torts must be a matter of uncertainty is not ground for refusing damages. In such cases plaintiff is not denied all right of recovery and the amount is fixed by the court in the exercise of sound discretion. See 25 C. J. S., Damages, p. 494, sec. 28." *Maitland v. Twin City Aviation Corp.* (1949), 254 Wis. 541, 549, 37 N. W. (2d) 74. Cases from other states illustrating the same principle have been called to our attention. *Smith v. Mendonsa* (1952), 108 Cal. App. (2d) 540, 238 Pac. (2d) 1039—loss of profits caused by trees of the defendant shading fruit trees of the plaintiff. *Harrison v. Petroleum Surveys* (La. Ct. App. 1955), 80 So. (2d) 153—damage to the productivity of a marsh as an area for trapping wild muskrat. The rule is stated in 15 Am. Jur., Damages, p. 414, sec. 23, as follows:

"There is a clear distinction between the measure of proof necessary to establish the fact that the plaintiff has sustained some damage and the measure of proof necessary to enable

the jury to fix the amount. Formerly, the tendency was to restrict the recovery to such matters as were susceptible of having attached to them an exact pecuniary value, but it is now generally held that the uncertainty which prevents a recovery is uncertainty as to the fact of the damage and not as to its amount and that where it is certain that damage has resulted, mere uncertainty as to the amount will not preclude the right of recovery. This view has been sustained where, from the nature of the case, the extent of the injury and the amount of damage are not capable of exact and accurate proof. Under such circumstances all that can be required is that the evidence with such certainty as the nature of the particular case may permit lay a foundation which will enable the trier of facts to make a fair and reasonable estimate, and the plaintiff will not be denied a substantial recovery if he has produced the best evidence available and it is sufficient to afford a reasonable basis for estimating his loss. There are many cases where the extent of the injury cannot be ascertained immediately thereafter and where evidence is permitted to be given to show the probable extent thereof, and a recovery allowed on that basis. Events which occur after the wrong complained of may serve to render the damages sufficiently certain.

"The requirement of certainty does not prevent the drawing of reasonable inferences from the facts and circumstances in evidence; and where a tort is of such a nature as to preclude the ascertainment of the amount of damages with certainty, it is enough if the evidence shows the extent of the damages as a matter of just and reasonable inference, although the result is only approximate."

While this is a close question, it is our opinion that the circuit court was in error in changing the jury's answers and that they should have been allowed to stand and be reflected in the judgment.

The Loan Company asserts that the circuit court erred in instructing the jury upon the measure of damages. It takes particular exception to an instruction that the measure of damages "is such sum as will reasonably compensate [the Mawhinneys] for such loss in property value, if any, as you

determine from all the credible evidence in the case they have actually suffered by reason of the negligence, if any, of the defendant auction company." The instruction might well have spelled out the proposition that the loss was the difference between the total of prices actually received and the prices which the jury reasonably believed would have been received but for the negligence of the Loan Company. Nevertheless, the instruction given was not erroneous and no instruction covering the point had been requested by the Loan Company.

3. *Allowances in favor of the Loan Company*. The Loan Company did not file a cross complaint against the Mawhinneys. Nor did their answer to the Mawhinneys' cross complaint set forth a counterclaim. The answer did, however, set forth a statement of the total sales proceeds and the various adjustments or credits to be allowed in favor of the Loan Company and these showed a total indebtedness of the Mawhinneys to the Loan Company in the amount of $750.75. Judgment was accordingly demanded in that amount "in addition to any sum recovered by the plaintiffs against this defendant." In reaching this balance the Loan Company claims not only the adjustments heretofore referred to but the $39 paid to Mawhinneys, commission of the Loan Company in the amount of $578.28, and $1,000 advanced by the defendant to the Mawhinneys. The Mawhinneys contend that because there was no cross complaint or counterclaim, no affirmative relief could be granted to the Loan Company. They rely upon sec. 263.15, Stats., which authorizes the granting of affirmative relief in favor of one defendant and against another. The section states: ". . . Such relief may be demanded by a cross complaint or counterclaim, served upon the party against whom the relief is asked. . . ." They point out that prior to September 1, 1954, the rule stated that "such relief may be demanded in the answer." The rule is not applicable, however, to this situation. The Mawhinneys'

cross complaint sought an accounting in equity, and such actions are a recognized exception to the ordinary rule that affirmative relief will not be granted to a defendant unless he demands the same by setoff or counterclaim. *Miller v. Joannes* (1952), 262 Wis. 425, 428, 55 N. W. (2d) 375. This exception finds reason in the very nature of the equitable action for accounting and we do not consider that our amendment of sec. 263.15 abrogates it.

When the court granted judgment for the Loan Company for the return of the cash advance and the $39 received by the Mawhinneys out of the proceeds, it also denied recovery of damages by Mawhinney. Now, however, that such recovery will be allowed, those amounts and others should be allowed as offsets in favor of the Loan Company and against the larger amount for which judgment is to be given the Mawhinneys. Since the Mawhinneys are to be made whole by the granting to them of damages suffered, it follows that the Loan Company is entitled to credits for its commission and to the amount which it will have paid to plaintiffs in excess of the sale proceeds. Accordingly, judgment should be granted in favor of Mawhinneys and against the Loan Company in a net amount derived as follows:

Mawhinneys are entitled to a credit of $3,500. The Loan Company is entitled to the following:

Commission ..........................$    578.33
Return of cash advance .................$ 1,000.00
Proceeds paid to Mawhinneys ...........$     39.00
Amount by which the recovery of plaintiffs
   against the Loan Company, plus $10,700,
   exceeds the proceeds of the sale ........$    891.34
Or a total credit to the Loan Company of   $ 2,508.67

Interest should be computed on each of the items credited to the Loan Company from October 11, 1954. Interest on the $3,500 allowed as damages will be computed from the date of the verdict as an item of costs. Since the Mawhinneys'

indebtedness to the plaintiffs will have been fully paid and since the portion of the payments made by the Loan Company which exceeds the sale proceeds is to be credited in favor of the Loan Company, the mortgage on the Plymouth car must be deemed satisfied.

*By the Court.*—The part of the judgment vacating the interlocutory judgment in favor of plaintiffs and against defendants Mawhinney is affirmed. The other parts of the judgment appealed from are reversed, and the cause remanded with directions to enter judgment in favor of plaintiffs and against defendant Fort Atkinson Loan & Investment Company in the amount of $1,757.87 together with interest and costs; with directions to reinstate the answers of the jury to questions 4 and 5 of the special verdict and to grant judgment in favor of defendants Courtney and Josephine Mawhinney and against defendant Fort Atkinson Loan & Investment Company computed in accordance with the opinion and with costs.