WISCONSIN NATURAL GAS COMPANY, a Wisconsin corporation, Plaintiff-Respondent, Cross-Appellant and Cross-Petitioner,

v.

FORD, BACON & DAVIS CONSTRUCTION CORPORATION, a foreign corporation, Defendant-Appellant, and Cross-Respondent-Petitioner,

TOMARO CONTRACTORS, INC., a Wisconsin corporation, Defendant-Respondent,

EMPLOYERS MUTUAL LIABILITY INSURANCE COMPANY OF WAUSAU a Wisconsin corporation, Defendant.†

Supreme Court

*No. 77–838. Argued March 3, 1980.—Decided May 6, 1980.*

(Also reported in 291 N.W.2d 825.)

† Motion for reconsideration denied, without costs, on June 27, 1980.

316

For Ford, Bacon & Davis Construction Corporation there were briefs by *Willard S. Stafford, Robert Horowitz, Peter T. Julka, Gary M. Young, John W. Markson, Jr.,* and *Stafford, Rosenbaum, Rieser & Hansen,* all of Madison; *Burt W. Sperry* and *Shotwell, Brown & Sperry,* of counsel, of Monroe, Louisiana; and oral argument by *Willard S. Stafford* and *Robert Horowitz.*

For Wisconsin Natural Gas Company there were briefs by *George W. Greene, William P. Croke, Douglas H. Starck* and *Prosser, Wiedabach & Quale, S.C.,* of Milwaukee, and oral argument by *George W. Greene* and *William P. Croke.*

For Tomaro Contractors, Inc., there was a brief by *Francis X. Krembs* and *Kenney, Krembs & Fellows* of Milwaukee, and oral argument by *Francis X. Krembs.*

COFFEY, J. Ford, Bacon & Davis Construction Corp. (Ford, Bacon & Davis), has appealed from that portion of the court of appeals' decision holding that the plaintiff's, the Wisconsin Natural Gas Company (the Gas Company), cause of action was not barred by the six (6) year statute of limitation, sec. 893.19(5), Stats., and refusing to modify the comparative negligence rule of law as set forth in sec. 895.045. The Gas Company cross-

appealed from that portion of the court of appeals' decision affirming the trial court's refusal to allow the jury to consider the claims for (1) "future damages" and (2) damages incurred as a result of the negligent installation of piping necessitating excavations numbered 12, 32, 40 and 47.

The subject of the appeal was the negligent installation of a 14 mile natural gas transmission pipeline in Milwaukee County by Ford, Bacon & Davis and Tomaro Construction Co. The Gas Company retained the defendant-appellant, Ford, Bacon & Davis, a pipeline engineering and consulting firm, to design and supervise the installation of the pipeline. The defendant-respondent, Tomaro Contractors, Inc.[1] (Tomaro) was hired as the contractor for the installation of the pipeline (excavation, etc.).

Construction of the pipeline was commenced in January, 1968 and became operational in September of the same year. Two months thereafter, in November, shortly after the pipeline was operational, the Gas Company conducted a survey to test for possible corrosion. Following this survey, in early 1969 (March or April), the utility retained the Harco Corporation (Harco), a corrosion engineering firm specializing in cathodic protection,[2] to conduct a more extensive corrosion survey and to assist in developing a system of cathodic protection on the pipeline. In May of 1969 Harco located one casing short[3] at a street crossing but concluded that the

[1] Employers Mutual Liability Insurance Company of Wausau insured Tomaro against claims of negligence arising out of the construction of the pipeline. Employers Mutual was subsequently dismissed from the lawsuit and thus is not involved in this appeal.

[2] Cathodic protection is a process involving the application of a direct electrical current to an underground metal structure (such as a pipeline) to protect it from corrosion.

[3] A casing short occurs when two pieces of metal piping come in contact with each other, such as a "carrier pipe" making contact

pipeline could be cathodically protected from corrosion "with little difficulty." Harco then designed and installed a system of cathodic protection to prevent further corrosion to the pipeline. In January, 1970, after the cathodic protection process was in operation, Harco recommended a yearly survey of the system. The Gas Company, following Harco's recommendation, conducted a second survey in early 1971, and after finding a number of casing shorts, determined that the pipeline could no longer be considered under cathodic protection. As a result of their findings in the 1971 survey, the Gas Company hired a second engineering and consulting firm, the Hinchman Company (Hinchman), to conduct a comprehensive survey of the entire 14 mile pipeline installed less than three (3) years earlier. Hinchman discovered six (6) "shorts" (five (5) casing and one (1) intermittent short)[4] and recommended that the utility clear and repair the underground casing shorts thus necessitating extensive excavation. Hinchman recommended that the utility excavate and repair as opposed to increasing the electrical current of the cathodic protection process because the current was already operating at its maximum level.

As a result of Hinchman's report and recommendation, the Gas Company embarked upon an extensive program of repair and maintenance of the pipeline to clear the "shorts." The work was divided into three phases involving 49 separate excavations. Phase I of the work included eight excavations, made between July and De-

---

with a "casing pipe." When these pipes come in contact it creates an electrical charge thus causing the pipes to become pitted and corroded, shortening the useful life of the pipeline.

[4] An intermittent short refers to an electrical charge that occurs at periodic intervals and is caused by the carrier and casing pipes coming in contact or due to the seepage of water into the casing pipe. An intermittent short is distinguishable from a casing short which is a continuous electrical charge.

cember of 1972, at street crossings where there were indications of casing shorts. The following year the Gas Company commenced Phase II of the project and repaired and cleared casing shorts at 22 sites between August of 1973 and December of 1974, primarily in areas where the pipeline crossed under streets.

As part of their continuing effort to rectify the problems of casing shorts resulting from the faulty installation of the pipeline, the Gas Company conducted another survey and utilized a new instrument known as a "kaliper pig" for locating and measuring any diametrical changes in the pipeline, such as buckles or dents. Following the survey with the "kaliper pig," the Gas Company completed the third and last phase of the repair project between May of 1976 and December of 1977 and thus incurring the additional expense of nineteen (19) more excavations.

It should be noted that the 14 mile gas pipeline was enclosed within outer casing pipes only at those locations where the gas line was laid under street or railroad crossings. Insulators[5] were then installed on the carrier pipe to keep it from coming in contact with the casing pipe. The principal source of the pipeline problems occurred at locations where the contractor, Tomaro, in laying the pipeline under street and railroad crossings, failed to provide adequate support or proper backfill in the trenches. As a result of the negligent installation of the gas pipeline, the outer casing pipe and the enclosed gas line shifted, thus causing the gas line to come in contact with the protective casing pipe and causing "casing shorts." On site inspections of the gas line confirmed that the "carrier piping" had shifted because Tomaro had failed to provide adequate support for the gas line against the expected settling and shifting of

[5] Insulators are circular metal bands about 12 inches wide with insulated runners attached to the carrier pipe.

the soil after installation of the pipeline. The inspections also revealed evidence that the pipeline had "buckled" or dented at other locations due to Tomaro's negligence, necessitating the removal of several other sections of damaged pipe during the repair program.

Following the costly and extensive surveys and repair of the pipeline, the Gas Company in 1975 commenced the present lawsuit against Ford, Bacon & Davis and Tomaro alleging that their joint negligence caused damage to the pipeline, thereby rendering it unusable. Specifically, the utility contends that the contractor, Tomaro, was negligent in the installation of the pipeline by failing to provide adequate support for the pipe in light of anticipated shifting soil conditions. It was alleged that Ford, Bacon & Davis' (the engineering inspector and consultant) negligence was attributable to its failure to properly supervise the construction of the pipeline. The Gas Company claimed that as a result of the defendants' negligence, it incurred the added expenses of inspection, repair and unusually early maintenance problems of the pipeline.

The defendants, Ford, Bacon & Davis and Tomaro, claimed that the plaintiff's cause of action was barred by the six-year statute of limitation contained in sec. 893.19(5), Stats., because it was not commenced until six years and one month after the determination of the original defect. The defendants also answered the complaint alleging that the Gas Company was negligent in that it substituted inferior pipe and insulators (a thinner piping) than those recommended by Ford, Bacon & Davis.

Following a five week trial, the jury, answered a series of special verdict questions, finding the Gas Company 40% causally negligent, Ford, Bacon & Davis 45% causally negligent and Tomaro 15% causally negligent. The jury assessed total damages in the amount of $394,-

740. The trial court entered judgment in favor of the plaintiff, the Gas Company, against the defendant, Ford, Bacon & Davis, in the amount of $236,844, plus costs (60% of the total damages).[6] Ford, Bacon & Davis appealed from that portion of the judgment, holding:

". . .(1) in favor of the plaintiff, Wisconsin Natural Gas Company, against the defendant, Ford, Bacon & Davis Construction Corp., for the sum of $236,844.00 damages, and $5,637.74 costs, amounting in the aggregate to $242,481.74 damages and costs; and (2) in favor of the defendant, Tomaro Contractors, Inc., dismissing the above-entitled action as to the defendant, Tomaro Contractors, Inc., on the merits and for the recovery of $460.80 costs by the defendant, Tomaro Contractors, Inc., against the plaintiff."

The Gas Company cross-appealed from that portion of the judgment awarding it $242,481.74 in damages and costs and "seeks a modification of that judgment increasing the amount of damages or granting a new trial on the issue of damages." The court of appeals affirmed the trial court's judgment affirming the jury verdict and Ford, Bacon & Davis and the Gas Company each petitioned for review of the decision of the court of appeals.

*Issues:*

1. Was the Wisconsin Gas Company's cause of action for negligence barred by the six-year Statute of Limitation?

2. Should the statutory law of comparative negligence in multiple tortfeasor cases be changed so as to combine and compare the negligence of the defendants to that of the plaintiff's negligence?

3. Should the rule of joint and several liability be abolished?

4. Did the trial court err in failing to include a special verdict question for future damages?

---

[6] Tomaro was dismissed from the action because its negligence was less than that of the plaintiff, the Gas Company.

5. Did the trial court err in failing to include in the damage question all of the damages the Gas Company requested, specifically the costs of the excavations numbered 12, 32, 40 and 47?

*Statute of Limitations*

On review, the petitioner, Ford, Bacon & Davis, contends that the Gas Company's cause of action for negligence is barred by the six-year statute of limitation, sec. 893.19(5),[7] as the cause of action accrued "in or before May of 1969" and the lawsuit was not commenced until June 27, 1975.

The statute of limitation time period ". . . begins to run . . . at the time that the cause of action accrues." *State v. Wisconsin Telephone Co.*, 91 Wis.2d 702, 718, 284 N.W.2d 41 (1979); *Hartford Fire Ins. Co. v. Osborn Plumbing*, 66 Wis.2d 454, 461, 225 N.W.2d 628 (1975). *Abramowski v. Wm. Kilps Sons Realty, Inc.*, 80 Wis.2d 468, 259 N.W.2d 305 (1977). In *Holifield v. Setco Industries, Inc.*, 42 Wis.2d 750, 168 N.W.2d 177 (1969), this court held that:

" 'A cause of action accrues where there exists a claim capable of present enforcement, a suable party against whom it may be enforced, and a party who has a present right to enforce it.' " *Id.* at 754.

In negligence actions, such as this case, the cause of action accrues and the statute of limitations begins to run at the time an injury occurs:

"It is the fact and date of injury that sets in force and operation the factors that create and establish the basis

---

[7] Sec. 893.19(5) reads: "Within 6 years; one year notice of damage by railroad. Within 6 years: . . .

"(5) An action to recover damages for an injury to property, . . . not arising on contract, except in case where a different period is expressly prescribed."

for a claim of damages. It is true that, without an act of negligence, no claim for damages based on negligence can arise. It is likewise true that, without the result of injury, no claim for damages based on negligence can be asserted, or at least successfully asserted. Both the act of negligence and the fact of resultant injury must take place before [sic] cause of action founded on negligence can be said to have accrued." *Holifield v. Setco Industries, Inc., supra* at 756. *See also: Abramowski v. Wm. Kilps Sons Realty, Inc., supra;* and *Hartford Fire Ins. Co. v. Osborn Plumbing, supra.*

The petitioner, Ford, Bacon & Davis, alleges that the Gas Company's cause of action accrued in May of 1969 when the first (original) casing short was discovered or that the utility had six years from the discovery of the original "casing short" or until May of 1975 to commence the action. The Gas Company commenced the present litigation in June of 1975. The court of appeals rejected the petitioner's argument citing the case of *Tallmadge v. Skyline Construction, Inc.,* 86 Wis.2d 356, 272 N.W.2d 404 (Ct. App. 1978). In *Tallmadge v. Skyline Construction, Inc., supra,* the court of appeals held that:

". . . a cause of action accrues and the statute of limitations (sec. 893.19 (5), Stats.) begins to run *when the evidence of injury to property,* resulting from the negligent act upon which the action is based, is sufficiently *significant to alert the injured party to the possibility of a defect.* The injury need not, however, be of such magnitude as to identify the causal factor." (Emphasis supplied.) *Id.* at 359.

The court of appeals reasoned that the ". . . evidence of the one casing short, known to WNG [the Wisconsin Natural Gas Company] in May, 1969, was not 'sufficiently significant' to alert WNG that there existed a defect, or a possibility of a defect, in the pipeline."

Mr. Howard Hayes, a retired engineer and Vice-President in charge of construction for Ford, Bacon & Davis, testified that "casing shorts" are "quite a usual phenomena" in the industry. In fact, he went on to state that:

"I have never known of a pipeline system, including Panhandle Eastern, that did not have casing shorts and I mean usually have some every year, get new ones. I just noticed a paper by the National Society of Corrosion Engineers, I guess it was, where they had stated that they averaged 25 percent of all crossings shorted out according to their survey or their information. So it's something that happened to everybody that's ever had a pipeline, to my knowledge. And the fact that they may correct them this year, they may have some more next year. It's something that we've never been able to control completely. It's not considered a terribly serious thing."

In view of the fact that "casing shorts" are a "usual phenomena" and are often caused not only by the improper installation of a pipeline but may also result from other factors such as water in the pipeline, we hold that the discovery of a single casing short, in a relatively new pipeline, is not "sufficiently significant" to alert the Gas Company to the possibility of major defects throughout the entire 14 mile pipeline. It is unreasonable for the defendants to expect or this court to require the plaintiff, the Gas Company, to excavate the entire 14 miles of pipeline less than one year old in May of 1969 at a cost in excess of $400,000 based on their discovery of one single casing short. A single casing short is not the type of evidence that this court considers to be "sufficiently significant to alert the injured party to possibility of a defect." *Id.* at 359. Moreover, the Gas Company did not actually suffer an injury until a number of "casing shorts" rendered the cathodic protection process ineffective and necessitated an extensive excavation and repair program to clear the pipeline of the shorts.

■

Therefore, we hold that the Gas Company's cause of action in negligence was well within the six-year statute of limitation period and thus not barred, and that the utility's cause of action did not accrue until 1971 when Hinchman's survey disclosed a number of "casing shorts" and sections of dented and buckled pipe requiring extensive excavation (49 in number) of the pipeline.

*Comparative Negligence*

Next, the defendant, Ford, Bacon & Davis, contends that this court should change the Wisconsin comparative negligence rule of law so that the negligence of a plaintiff will be compared to the combined negligence of all defendants rather than compared to the individual negligence of each defendant. Ford, Bacon & Davis contends that changing from an individual defendant's comparison rule to a combined comparison rule will lead to a more just and equitable result because each defendant then will be held liable only for his or her proportionate share of the damages.[8] The petitioner cites certain language in *May v. Skelley Oil Co.,* 83 Wis.2d 30, 264 N.W.2d 574 (1978) wherein the author of the majority opinion stated that the court can and should change the statutory rule of comparative negligence. However, it should be pointed out that the language referred to by the petitioner in *May v. Skelley Oil Co., supra,* is merely *obiter dicta* and thus is not binding on this court.

■

It is clear that our present contributory negligence statute, sec. 895.045, Stats.,[9] requires that in cases in-

---

[8] In this case, Ford, Bacon & Davis would have been held liable for 45% of the damages and Tomaro would have been responsible for 15% of the damages.

[9] Sec. 895.045, Stats., reads:

"**Contributory negligence.** Contributory negligence shall not bar recovery in an action by any person or his legal representative to

volving multiple tortfeasors the negligence of a plaintiff is compared to the individual negligence of each defendant rather than the combined negligence of all defendants, as Ford, Bacon & Davis advocates. In *Schwenn v. Loraine Hotel Co.*, 14 Wis.2d 601, 111 N.W.2d 495 (1961) this court held that:

". . . the comparison of negligence in a multiple-defendant case . . . to be *between the plaintiff and the individual defendants.* See *Walker v. Kroger Grocery & Baking Co.* (1934), 214 Wis. 519, 252 N.W. 721. *Otherwise, it would be possible for a plaintiff to recover from a defendant less negligent than himself. We cannot believe that the legislature intended such a result.*" (Emphasis supplied.) *Id.* at 609–10.

In *Soczka v. Rechner*, 73 Wis.2d 157, 164, 242 N.W.2d 910 (1976) and *Mariuzza v. Kenower*, 68 Wis.2d 321, 228 N.W.2d 702 (1975), this court reaffirmed the holding that in multiple tortfeasor cases, sec. 895.045, Stats., provides for the individual comparison of a plaintiff's negligence with each of the defendants to determine whether or not the plaintiff is entitled to recover damages. It is a well established rule of statutory construction that once this court has interpreted the statute as establishing an individual comparison rule that construction should be maintained unless and until the legislature amends or repeals the statute:

". . . Where a law passed by the legislature has been construed by the courts, legislative acquiescence in or refusal to pass a measure that would defeat the courts' construction is not an equivocal act. The legislature is presumed to know that in absence of its changing the law, the construction put upon it by the courts will remain unchanged; for the principle of the courts' deci-

recover damages for negligence resulting in death or in injury to person or property, if such negligence was not greater than the negligence of the person against whom recovery is sought, but any damages allowed shall be diminished in the proportion to the amount of negligence attributable to the person recovering."

sion—legislative intent—is a historical fact and, hence, unchanging. Thus, when the legislature acquiesces or refuses to change the law, it has acknowledged that the courts' interpretation of legislative intent is correct. This being so, however, the courts are henceforth constrained not to alter their construction; having correctly determined legislative intent, they have fulfilled their function." *Zimmerman v. Wisconsin Electric Power Co.,* 38 Wis.2d 626, 633–34, 157 N.W.2d 648 (1968).

The legislature has not seen fit to amend or repeal the statute up to this date and thus it can be presumed that the legislature is satisfied with the present status of the comparative negligence law.

On a number of occasions this court has considered the question of whether or not it should modify or change our comparative negligence rule of law (requiring individual comparison) and this court has consistently held that the decision of whether to change the comparative negligence rule of law is a legislative matter.

In *Vincent v. Pabst Brewing Co.,* 47 Wis.2d 120, 177 N.W.2d 513 (1970), a majority of the court held to the view that:

". . . I would defer to the legislature as the proper body to make a complete study of the subject and to adopt changes it concludes appropriate." *Id.* at 130. (concurring opinion).

*See also: Lupie v. Hartzheim,* 54 Wis.2d 415, 195 N.W.2d 461 (1972) ; and *Soczka v. Rechner, supra.* Moreover, Chief Justice BEILFUSS, writing in a most recent opinion of this court, *Reiter v. Dyken,* 95 Wis.2d 461, 290 N.W.2d 510 (1980) held that the decision to change the present system of comparative negligence is best left to the legislative branch of government:

"To change from the present rule to one in which a plaintiff would be allowed to recover against a person less negligent than himself would have significant rami-

fications throughout the tort system of allocating losses as it now exists in this state. Specifically, such a change would raise important questions about the extent of a less negligent defendant's liability and the operation of the rules of joint and several liability, contribution, set-off and release. Indeed, unless accompanying changes are made in these related areas of law, the change requested by plaintiff may very well create far more serious problems than it is intended to resolve. For this reason we think plaintiff's request would be better addressed to the legislature.

"That body is better equipped to consider the change advocated by plaintiff together with the corresponding changes in other areas of the law that would be necessary to insure a fair and even system of apportioning liability for negligently caused injuries. It is more capable of fashioning and implementing the kind of comprehensive solution that the multiple tortfeasor situation requires." *Id.* at 474.

In a recent article, Comment, 62 Marq. L. Rev. 227 (1968), "Change of the Wisconsin Comparative Negligence Statute in Multi-Defendant Suits: *May v. Skelley Oil Co.*," the author concludes that the legislature is best suited for undertaking any changes of the comparative negligence system in this state[10] because any changes in our comparative negligence system would have broad ramifications throughout the entire body of tort-related law:

"In order to assure the most consistent and equitable results possible under a combined comparison rule, significant changes would need to be made in related areas. [joint and several liability, setoff, settlements and counterclaims]. The necessity of these changes in an additional argument for adoption of a combined comparison rule by the legislature rather than the court since the legisla-

[10] There is a bill presently pending before the legislature (Senate Bill 589) that would modify the present individual comparative negligence rule and adopt a combined or collective comparison approach such as the petitioner advocates.

ture could at the same time develop a consistent statutory scheme affecting these related areas. . . ." *Id.* at 259.

Therefore, in light of our prior holdings and the broad ramifications any changes in the comparative negligence area would have on the law of torts in general, we hold that any modification of the comparative negligence statute is best left to the legislature as they can conduct a full fact-finding hearing where a more thorough discussion of the subject can only lead to greater knowledge and expertise in the ever challenging area of tort law and we thus decline to do so.

### Joint and Several Liability

Ford, Bacon & Davis next argues that if the court decides not to change or modify the present system of comparative negligence and adopt a combined comparison approach, nevertheless this court should abolish the doctrine of joint and several liability as a matter of fairness. Under the existing rule of joint and several liability, Ford, Bacon & Davis is liable for the entire amount of the damages, reduced by the plaintiff's negligence. The petitioner, Ford, Bacon & Davis, contends that in view of the judgment that it was only 45% negligent, as a matter of fairness it should be held responsible for no more than 45% of the plaintiff's damages, the amount the jury found to be proportionate to its share of the causal negligence.

The doctrine of joint and several liability is a well established rule of law in this state. "It is settled in the law of negligence that any one of two or more joint tortfeasors, or one of or two or more wrongdoers whose concurring acts of negligence result in injury, are each individually responsible for the entire damage resulting from their joint or concurrent acts of negligence." *Kingston v. Chicago & N. W. Ry. Co.,* 191 Wis. 610, 613,

211 N.W. 913 (1927). The doctrine was initially applied at common law to situations where there was a concert of action or breach of a joint duty on the part of multiple tortfeasors. 1 F. Harper & F. James, *The Law of Torts*, §10.1 at 692 (1956). Thus, persons who acted in concert or breached a common duty causing injury were considered to be joint tortfeasors and each could be held liable for the entire amount of the damages. Later, the doctrine was extended to cases where a plaintiff sustained an indivisible injury, harm or damage as a result of the independent, separate, but concurring tortious acts of two or more persons. *Id.* at 693. "When two actors negligently conduct themselves so as to injure another, they become jointly and severally liable to the other if their actions concur in time to directly produce injury or to create an injury producing situation. *See: Butzow v. Wausau Memorial Hospital* (1971), 51 Wis.2d 281, 288, 289, 187 N.W.2d 349." *Johnson v. Heintz,* 73 Wis.2d 286, 302, 243 N.W.2d 815 (1976).

Shortly after our legislature enacted the comparative negligence statute, this court held that the common law doctrine of joint and several liability retained its vitality under the statute (895.045, Stats.) :

"Sec. . . . [895.045], Stats., does not change the common-law rule as to the extent to which every joint tortfeasor, who is liable at all, is liable for such damage as the injured person is now entitled to recover. At common law the injured person could not recover at all, if there was some negligence on his part which contributed to his injury. But, if he was entirely free from negligence, every one of the several tortfeasors, whose negligence was a cause of the injury, was liable for all of the resulting damage even though the negligence attributable to one of them may have been insignificant in proportion to the negligence of the others. . . . [T]here exists now, by virtue of the statute, a right to recover, subject, however, to the limitation prescribed by the statute, but the damage allowed shall be diminished in proportion to

the negligence attributable to the person recovering. That is the only limitation prescribed in respect to the amount recoverable. Otherwise, there is no provision which effects any change in the common-law rule that all tortfeasors who are liable at all, are liable to the injured person for the entire amount now recoverable by him." *Walker v. Kroger Grocery & Baking Co., supra* at 535–36.

Since that decision in 1934, this court has periodically considered the continuing vitality of the legal doctrine of joint and several liability. In *Chille v. Howell*, 34 Wis.2d 491, 149 N.W.2d 600 (1967), this court was confronted with a fact situation where the plaintiff was 5% negligent, a defendant was 75% negligent (but judgment proof), and a solvent defendant 20% negligent. The solvent defendant who was only 20% negligent urged ". . . that in this instance where recovery against Howell [the judgment-proof defendant] is impossible or improbable that Chille's [the plaintiff] negligence should be compared to Grimstad [the solvent defendant] as a whole which would reduce Chille's recovery by $5/25$ so as to permit a recovery of 80 percent of the amount awarded rather than 95 percent as ordered by the trial court." *Id.* at 500. The court rejected this approach, holding:

"The construction of the comparative-negligence statute as announced in *Walker v. Kroger Grocery & Baking Co., supra,* has been the law since 1934; several of our cases have reaffirmed the rule based upon the ancient common-law concept of joint and several liability of joint tort-feasors. We are not persuaded it should be changed." *Id.* at 500.

In *Fitzgerald v. Badger State Mutual Casualty Co.,* 67 Wis.2d 321, 227 N.W.2d 444 (1975), the plaintiff was 5% negligent, one defendant 30% and the other 65% negligent. Since the second defendant, adjudged 65% negligent, was judgment proof, the defendant, found 30%

negligent, argued that he should not be held liable for the entire judgment, but only for his *proportionate* share of the damages (30%). The court once again declined to modify the rule of joint and several liability quoting *Chille v. Howell, supra,* and adding "No new argument is advanced here warranting our modification or reversal of *Chille." Id.* at 332. Additionally, when this court fashioned a rule of contribution among joint tortfeasor defendants in *Bielski v. Schulze,* 16 Wis.2d 1, 114 N.W. 2d 105 (1962), this court affirmed the doctrine of joint and several liability among concurrent tortfeasors: "We make it plain at the outset that this refinement of the rule of contribution does not apply to or change the plaintiff's right to recover against any defendant tortfeasor the total amount of his damage to which he is entitled." *Id.* at 6.

Moreover, recently the California court in *American Motorcycle Ass'n. v. Superior Court of Los Angeles County,* 20 Cal. 3rd 578, 146 Cal. Rptr. 182, 578 P.2d 899 (1978), in support of the doctrine of joint and several liability, stated:

"In many instances a plaintiff will be completely free of all responsibility for the accident, and yet, under the proposed abolition of joint and several liability, such a completely faultless plaintiff, rather than a wrongdoing defendant, would be forced to bear a portion of the loss if any one of the concurrent tortfeasors should prove financially unable to satisfy his proportioned share of the damages." *Id.* at 589.

Thus, the elimination of the doctrine of joint and several liability could in many instances work a hardship on a plaintiff who was free of any negligence.

Therefore, in view of our prior holdings in *Chille v. Howell, supra,* and *Fitzgerald v. Badger State Mut. Cas. Co., supra,* reaffirming the application of the well established common-law doctrine of joint and several liabil-

ity to our present rule of comparative negligence, and in view of the petitioner's failure to advance any compelling reasons or new legal arguments for modifying or abandoning the rule of joint and several liability in this case, we are thus not persuaded that it should be changed, modified or eliminated.

*Damages*

The Gas Company contends that it should be granted a new trial on the issue of damages because:

1. the trial court erred in refusing to include a jury question as to "future damages," ruling that the issue of future damages was too speculative for the jury to consider;

2. the trial court erred in refusing to permit the jury to consider whether the Gas Company was entitled to damages for the costs of excavations, numbered 12, 32, 40 and 47.

3. the jury's damage award was inadequate.

In *Cutler Cranberry Co. v. Oakdale Elec. Cooperative*, 78 Wis.2d 222, 254 N.W.2d 234 (1977) this court held that:

"It is a well established rule that damages must be proven with reasonable certainty. *Caygill v. Ipsen*, 27 Wis.2d 578, 589–90, 135 NW.2d 284 (1965). However, there is no absolute requirement of mathematical precision, and the fact that the full extent of the damages is a matter of uncertainty by reason of the nature of the tort is not a ground for refusing damages. *White v. Benkowski*, 37 Wis.2d 285, 289, 155 N.W.2d 74 (1967); *Essock v. Mawhinney*, 3 Wis.2d 258, 269, 88 N.W.2d 659 (1958); *Matiland v. Twin City Aviation Corp.*, 254 Wis. 541, 549, 37 N.W.2d 74 (1949).

"In *Essock v. Mawhinney, supra* at 270, the court favorably quoted the following from 15 Am. Jur. *Damages* §23, at 414:

" ' "[I]t is now generally held that the uncertainty which prevents a recovery is uncertainty as to the fact

of the damage and not to its amount and that where it is certain that damage has resulted, mere uncertainty as to the amount will not preclude the right of recovery. This view has been sustained where, from the nature of the case, the extent of injury and the amount of damage are not capable of exact and accurate proof. Under such circumstances all that can be required is that the evidence with such certainty as the nature of the particular case may permit lay a foundation which will enable the trier of fact to make a fair and reasonable estimate. . . ." ' " *Id.* at 233–34.

In this case the question of future damages refers to the costs of excavations the Gas Company contends it will have to make in the future to determine other damage to the pipeline. The utility states that prior to the commencement of the trial, it did not have the opportunity to complete on site inspections of the gas line and thus ascertain the cause and extent of any anticipated future damage or injury to the pipeline. The trial court refused to permit the jury to consider the question of these anticipated damages, finding the issue "too speculative" for consideration and in effect directed a verdict against the Gas Company on that issue. The court of appeals, in turn, affirmed the trial court's action.

Wisconsin Civil Jury Instruction 1740, Jury not to Speculate, establishes that:

". . . The law permits and allows only such damages as have been proved to be to a reasonable certainty to result from the accident. The duty or burden to prove damages to a reasonable certainty by the greater weight of the credible evidence is not satisfied by evidence which merely shows that something might or might not exist or might or might not occur in the future. Damages must be established by evidence and reasonable inferences from evidence. Mere possibilities leave the solution of an issue of fact in the field of speculation and conjecture to such an extent as to afford no basis for an inference to

a reasonable certainty; and, in the absence of at least such an inference, there is no sufficient basis for a finding of fact."

In *Hargrove v. Peterson,* 65 Wis.2d 118, 221 N.W.2d 875 (1974), this court held that the instruction to the jury not to speculate:

". . . merely makes clear that probability, not possibility, is required as to a claim of future disability by reason of an injury. To justify an assessment of damages for future or permanent disability, it must appear by the proofs offered and on the record made that such continued or future disability is reasonably certain to result from the injuries sustained." *Id.* at 125.

In *Kozlowski v. John E. Smith's Sons Co.,* 87 Wis.2d 882, 275 N.W.2d 915 (1979) this court held to the view that:

"A verdict ought to be directed if, taking into consideration all the facts and circumstances as they appear in evidence, there is but one inference or conclusion that can be reached by a reasonable man." *Id.* at 898.

On review this court "must examine the evidence most favorable to the party against whom the motion is directed [the Gas Company] and if there is any evidence which will sustain his cause of action, the motion should have been denied. . . ." *Peter M. Chalik & Associates v. Hermes,* 56 Wis.2d 151, 154, 201 N.W.2d 514 (1972) quoting from *Low v. Siewert,* 54 Wis.2d 251, 252, 195 N.W.2d 451 (1972).

An examination of the record establishes that the Gas Company, because of its failure to excavate and inspect the pipeline at the sites of the intended future excavations prior to commencing the trial, lacked sufficient evidence to substantiate that any future damages to the pipeline were caused by the defendants (Ford, Bacon &

Davis or Tomaro). Moreover, the trial judge found the question of amount of future damages to be speculative:

"It tends to be speculative as to what the amount would be, if any. That pipeline could live now for an indefinite period or it could go blooey tomorrow. And I don't think I can permit this jury to speculate.

"As you well know, there is an instruction on speculation. I think it would be pure, absolute speculation if the jury were to pick a number out of a hat, out of the air so to speak, with respect to that."

Therefore, in view of the nature of the lack of evidence in the Gas Company's failure to establish either the amount of future damages or that the defendant in fact caused this alleged future damage to the pipeline, we hold that the trial court and court of appeals were correct in excluding from the jury a question on the issue of future damages.

Secondly, we hold that the trial court and the court of appeals' affirmance of the trial court's refusal to submit to the jury for consideration the question of whether the Gas Company should be awarded costs for the work done at excavation #12 was proper. The record establishes that after excavating at that location, the Gas Company determined that there was no damage to the pipeline. Furthermore, the Gas Company was unable to convince the trial court that any damage existed in the pipeline at that location prior to their commencing a costly excavation.

Thirdly, we hold that the trial court erred when it refused to permit the jury to consider the costs of excavations numbered 32, 40 and 47 as part of the Gas Company's damages. At trial, evidence was presented to the effect that the Gas Company had done repair work to the pipeline at or near the locations or excavations 32, 40 and 47 between the time the gas line was negligently

installed by Tomaro and the time of the Gas Company's excavations at those sites. Consequently, the evidence demonstrates that a jury question was presented as to whether the damages found at excavation sites 32, 40 and 47 were caused either by the defendants', Ford, Bacon & Davis and Tomaro, original negligent installation of the pipeline or by the Gas Company's repair activity. The trial court, however, ruled as a matter of law that the utility's repair activity was a superseding and intervening cause of the damages at those three locations and in effect directed a verdict against the Gas Company on the issue of damages at excavations numbered 32, 40 and 47.

The standard of review in directed verdict cases was set forth by this court in *Kozlowski v. John E. Smith's Sons Co., supra*, (quoting from *Samson v. Riesing*, 62 Wis.2d 698, 215 N.W.2d 662 (1974) as follows:

" ' The standard for determining whether the trial court erred in directing a verdict was stated in *Zillmer v. Miglautsch* (1967), 35 Wis.2d 691, 699, 151 N.W.2d 741:
" ' "[T]his court must take that view of the evidence which is most favorable to the party (the plaintiff in this case) against whom the verdict was sought to be directed. . . . If there is any evidence to sustain a defense or a cause of action, the case must be submitted to the jury . . . . The weight and sufficiency of the evidence is for the jury . . . as is the weight to be given to the witness' positive or negative testimony . . . . Furthermore, it is basic that the credibility of the evidence and the inferences to be drawn therefrom are matters for the jury . . . . If there is any evidence other than mere conjecture or incredible evidence to support a contrary verdict, the case must go to the jury . . . . Incredible evidence is evidence in conflict with the uniform course of nature or with fully established or conceded facts. . . . [citations omitted]." ' " *Id.* at 897–98.

A thorough review of the evidence in this case, when viewed most favorably to the plaintiff, the Gas Company, demonstrates that sufficient evidence existed in the record to support more than one inference or conclusion as to the cause of the damages to the pipeline at excavations 32, 40 and 47. Whether the damage was caused by the original negligence of the defendants (Ford, Bacon & Davis and Tomaro) in failing to provide adequate support or proper backfill, or by the Gas Company's intervening repair activity, is thus a very close question best left to the jury. In *Voith v. Buser*, 83 Wis.2d 540, 266 N.W.2d 304 (1978), this court held:

". . . that a verdict should be directed only when the evidence gives rise to no dispute as to material issues or only when the evidence is so clear and convincing as to reasonably permit unbiased and impartial minds to come to but one conclusion. *Crotteau v. Karlgaard*, 48 Wis.2d 245, 248, 179 N.W.2d 797 (1970).

"Moreover, we have stressed repeatedly that, except in the clearest of cases, a trial judge should withhold ruling on a directed verdict and ordinarily permit the question to go to the jury with leave to re-assert if necessary after the verdict. *Zillmer v. Miglautsch*, 35 Wis.2d 691, 699, 151 N.W.2d 741 (1967); *Hoffman v. Wausau Concrete Co.*, 58 Wis.2d 472, 479, 207 N.W.2d 80 (1973)." *Id.* at 550.

Similarly, in *Tombal v. Farmers Insurance Exchange*, 62 Wis.2d 64, 214 N.W.2d 291 (1974) this court held ". . . that in close cases the better practice is to reserve ruling on the motion for directed verdict and submit the matter to the jury." *Id.* at 72. As this court stated in *Kozlowski v. John E. Smith's Sons Co., supra:*

"This appeal presents a classic example of a 'close case' which requires the trial court to reserve a ruling on motions for a directed verdict until after jury submission and determination. *Samson v. Riesing, supra* at 700." *Id.* at 904.

Therefore, we hold that the issue of damages should have been submitted to the jury for consideration and that the court of appeals erred in affirming the trial court's action in directing a verdict against the Gas Company on the issue of damages at excavations numbered 32, 40 and 47. Thus, we reverse the court of appeals' decision on this issue. Furthermore, as was approved in *Seif v. Turowski*, 49 Wis.2d 15, 181 N.W.3d 388 (1970) (rehearing), where this court held that the issues to be considered on retrial may be restricted:

"In order to cut down the amount of work on retrials, this court in its discretion may restrict a retrial to the issues raised on appeal and which need retrying. Thus a new trial may include all issues or may be restricted to specific issues on a retrial, depending upon the requirements of justice." *Id.* at 25a.

we order the trial court to grant the Gas Company a new trial on the issues of liability and damages as to excavations 32, 40 and 47.

Fourthly, the plaintiff, the Gas Company, contends that the amount of the jury's damage award was unreasonable. In *Ollinger v. Grall*, 80 Wis.2d 213, 224 N.W.2d 693 (1977), this court held that:

"One seeking to overturn a jury damage award shoulders a heavy burden:

" 'If there is any credible evidence which under any reasonable view supports the jury finding as to [the amount of] damages, especially when the verdict has the approval of the trial court, this court will not disturb the finding. Even when it still appears that the award is low, this court will not interfere with the jury's finding, unless the award is so unreasonably low as to shock the judicial conscience.' *Puls v. St. Vincent Hospital*, 36 Wis.2d 679, 693, 154 N.W.2d 308 (1967). *See also: Hein v. Torgeson*, 58 Wis.2d 9, 205 N.W.2d 408 (1973)." *Id.* at 224.

In this case the jury awarded the Gas Company $394,740 in damages. We find there was credible evidence to

support the jury's verdict as to the amount of damages. Mr. Andrew Tomaro, the president of the defendant, Tomaro Contractors, Inc., stated that the costs claimed by the Gas Company to repair the pipeline "were at least two-thirds too high" and that the work could have been done for "30 percent of . . . [that] cost." The jury apparently found Mr. Tomaro's testimony credible because the actual damage award was $394,740 or approximately one-third of the damages the Gas Company requested. Moreover, the trial court approved the jury's damage award, stating "I have absolutely no quarrel with the amount awarded." Therefore, we hold that the damage award in this case, exclusive of those excavations not considered by the jury, was not "so unreasonably low so as to shock the judicial conscience" and thus we agree with the court of appeals' refusal to disturb the jury's findings as to the amount of damages.

*By the Court.*—The decision of the court of appeals is affirmed in part, reversed in part and cause remanded for a new trial on the limited issue of damages consistent with this opinion.

SHIRLEY S. ABRAHAMSON, J. (*dissenting*). I dissent from that part of the decision relating to comparative negligence. *See Reiter v. Dyken*, 95 Wis.2d 461, 290 N.W.2d 510 (1980) (Abrahamson, J., dissenting).

I am authorized to state that Justice Roland B. Day joins in this dissent.

The following memorandum was filed June 27, 1980:

PER CURIAM (*on motion for reconsideration*). Upon motions for reconsideration, the mandate is modified to read:

The decision of the court of appeals is affirmed in part, reversed in part and cause remanded for a new trial on the issues of liability and damages as to excavations 32, 40 and 47 consistent with this opinion.